GEORGE T. DANIEL, Ex'r., v. THE BOARD OF COMMISSIONERS OF EDGECOMBE COUNTY.

A contract for the loan of money made by the late County Courts for the support of the paupers in their respective counties, was *ultra vires*, and therefore void.

The denial of the power of a municipal corporation to borrow money is not inconsistent with an admission of its power to contract debts for legitimate purposes:

*Therefore*, where a County Court in 1864, had purchased supplies for the support of the poor, and to pay therefor and purchase other necessary provisions, borrowed money of the plaintiff: *It was held*, that the plaintiff was entitled to be subrogated to the rights of the creditors whose debts he paid, and recover as their substitute the value of what he paid, as upon a *quantum meruit*, according to the legislative scale.

A defendant will not be permitted to plead the statute of limitations, when it appears that the plaintff delayed bringing his action, under an agreement with the defendant that such action should abide the decision of another already instituted, and involving the same merits.

(The cases of *Winslow* v. *Commissioners of Perquimans*, 64 N. C. Rep. 214; *Yellowly* v. *Commissioners of Pitt*, 73 N. C. Rep. 164, and *Davis* v. *Commissioners of Stokes*, at this term, cited and approved.)

CIVIL ACTION, tried before *Seymour, J.,* at July Term, 1875, of EDGECOMBE Superior Court, upon the following

CASE AGREED :

At a regular term of the late County Court of Edgecombe county, held at Tarboro' on the fourth Monday of February, 1864, a majority of all the justices being present, an order was made in the words and figures following :

" It appearing to the satisfaction of the court that it will require at least $25,000 for the support of the paupers of this county for the next twelve months, including the amount due for provisions now on hand and not paid for ; and that there is nothing in the hands of the Treasurer of the Board of Wardens to meet the same, wherefore it being the duty of the court to provide for said deficiency, and the matter being fully

considered: *It is ordered*, by the court, a majority of the Justices being present, that Thomas Norfleet, Treasurer of the said Board of Wardens, be and is hereby fully authorized and requested to borrow as it shall be needed, upon the faith and credit of the county, not exceeding in the aggregate the sum of $25,000, to be returned to the lender or lenders two years after the termination of the present war, in currency, the interest to be payable annually in currency also; that the said Thomas be, and he is hereby fully authorized as Treasurer of said Board, and in behalf of the county, to sign certificates and deliver them to the persons from whom he may borrow the money, setting forth therein the sum borrowed and the particulars of the loan, and that it be his duty to report to the court at the next term a statement in writing showing the amount borrowed from each person and the date of each certificate issued by him. *It is further ordered*, That he borrow as much of the said sum as he can from the Wilson, and school funds of this county, receiving Confederate Treasury notes under $100, at par, but in borrowing from others that he do so upon as favorable terms as possible for the county by giving public notice and inviting competition; and the money when thus realized is hereby appropriated for the support of the paupers of this county in such matters as the Wardens shall direct."

The Wilson fund was a fund in the hands of the Chairman of the County Court, delivered to him and his successors by the late Louis D. Wilson for the benefit of the paupers of said county.

At the same term of the court an order was also made for borrowing money for the support of the families of indigent soldiers, but this fund had no connection with that borrowed under the order above written.

Thomas Norfleet, the Treasurer of the Wardens of the Poor, in pursuance of said order, after public advertisement and after complying with all the directions contained therein,

borrowed from John H. Daniel, the testator of the plaintiff, for and on behalf of the county, the sum of two thousand three hundred and twenty-five dollars in Confederate Treasury notes, on the terms that the county should pay for every dollar thereof 43 1-93 cents, being the sum of one thousand dollars, and issued to said Daniel the following certificate :

"TARBORO, N. C., April 9th, 1864.

This certifies that I, Thomas Norfleet, as Treasurer of the Board of Wardens for Edgecombe county, in behalf of said county, acting under authority conferred on me by the Court of Pleas and Quarter Session of said county, at February Term, 1864, have this day borrowed of John H. Daniel, the sum of two thousand, three hundred and twenty-five dollars in Confederate Treasury notes, to be repaid by the county at the end of two years after the expiration of the present war with the United States, at the rate of forty-three 1-93 cents for every dollar so borrowed. Amounting to one thousand dollars which last mentioned sum is to carry interest from the date hereof, payable in currency on the 9th day of April in each and every year hereafter until the said sum of one thousand dollars shall be paid. In witness whereof I have hereunto subscribed my name the day and year above written.
        (Signed)          THOMAS NORFLEET,
        Treasurer Board of Wardens for Edgecombe County."

The whole amount borrowed from individuals was $11,167 for which certificates were issued for $4,840.00, the residue of the $25,000 was borrowed from the Wilson fund and the common school fund.

The price agreed to be paid for said Confederate Treasury notes was the common price for which they could be obtained at that time, and the money so borrowed was used by the Treasurer of the Board of Wardens for the support of the paupers.

John H. Daniel died in the year 1873, leaving a last will and testament, in which the plaintiff was appointed his executor, and he has duly qualified as such.

At an adjourned meeting of the Board of County Commissioners for said county, held April 29th, 1873, William H. Johnston, Esq., an attorney at law, came before the Board and stated that he held, as attorney for the plaintiff's testator, the above certificate, and a similar one issued to Austin, Norfleet & Co.; that similar certificates were issued to and held by others ; that the holders desired to test the liability of the county on the same, and suggested that the most economical way was to let the firm of Austin, Norfleet & Co. decide all claims. To this he understood them to assent and four of the members of the Board (there being a vacancy,) accepted service of the writ of summons issued against them by Austin, Norfleet & Co., by writing their names then and there on the back of said summons, and on account of this agreement no suit was brought on the certificate of the plaintiff. Capt. W. S. Duggan was Chairman of the Board, and spoke for the Board ; no vote was taken.

The suit of Austin, Norfleet & Co., was heard before Judge Moore, at July Term, 1874, of said court, but before his Honor had announced his decision upon the liability of the defendants, and after the close of the argument, the plaintiffs proposed to the defendants to accept the scale value of the money loaned, and the proposition was accepted, and the suit compromised.

At the session of the Board of Commissioners held on the first Monday in January, 1875, the plaintiff applied to the defendants to pay the certificate above named, but the defendants refused to pay the same.

Upon the foregoing state of facts the court held:

1. The original certificate of April 9th, 1874, was invalid, not being under seal.

2. The defendants made no new promise in April, 1872,

32

sufficient to repel the bar created by the statute of limitation.

3. The proposition of Mr. Johnston to make the case of Austin, Norfleet & Co. a test case, was not voted on by the Board.

4. The action of the Board, if any, on said proposition was not recorded in the minutes of said Board.

Judgment was accordingly rendered for the defendants and the plaintiff appealed.

*Howard & Perry*, for the appellant.
*Phillips*, contra.

RODMAN J.   1. The first question we have to consider is the authority of the County Court of Edgecombe to borrow money in 1864, for the support of the county poor, for the ensuing year.   As the money was borrowed in 1864, the case is unaffected by the Constitution of 1868.   Municipal corporations being the creatures of statute law, possess no powers but those which are given to them by statute ; that is to say, by the Constitution or some Act of the Legislature.

The general question of the power of a municipal corporation to borrow money, is discussed in 1 Dillon Mun. Corp. sec. 83, and among the cases to which the author refers, that of *Ketchum* v. *City of Buffalo*, 14 N. Y. 356, seems particularly deserving of attention for its reasoning ; for the point was not decided.   Without undertaking to lay down a rule of universal application, we think that there was nothing in the duties imposed upon the County Courts, or in the powers given to them, which required for their exercise, a power to borrow money, or from which such power could be fairly implied.   By chap. 86 of the Revised Code, the general care of the poor is given to Wardens, who are required to be annually elected by the County Courts.   By sec. 7, " On application of the Wardens, the Justices, when providing for other county revenue, may lay a tax sufficient for the maintenance

of the poor, which shall be collected and paid to the Wardens," &c. This was the whole power of the County Court which is material to the present question. We are of opinion that the contract of the County Court with the testator of the plaintiff was *ultra vires* and void. This opinion is supported by that of the Supreme Court of New Jersey in the very recent case of *Hackettstown* v. *Swackhamer*, 37 N. J. Law, (8 Vroom) 191, and by the Supreme Court of the United States in *Mayor, &c*, v. *Ray*, 19 Wall. 468.

2. The denial of the power of a municipal corporation to borrow money, is not inconsistent with an admission of its power to contract debts for legitimate purposes. It is impossible to conceive how without this power, a County Court could perform the various duties imposed on it, for the welfare and good government of the county. Among these duties are included the building and repair of the necessary public buildings and bridges, the paying of the salaries of certain officers, of jurors, and of witnesses in certain cases, and sometimes of prosecuting and defending suits. There is no authority which denies the power, and its possession is directly decided, or necessarily implied, in many cases decided in this court, of which *Winslow* v. *Commissioners of Perquimans*, 64 N. C. Rep. 218, and *Yellowley* v. *Commissioners of Pitt*, 73 N. C. Rep. 164, may be taken as examples. The power to contract a debt is of necessity, but the power to borrow money is not, and though both are liable to abuse, the first is the less so.

3. In the present case the County · Court had purchased certain provisions for the poor, whereby they had contracted a debt, and the case states that the money which was borrowed from the testator of the plaintiff, and from others at the same time, was actually applied to the payment of that debt, and to purchasing other ' like supplies. All fraud is thereby excluded, and we see no reason why the plaintiff should not be subrogated to the rights of the creditors whose

debts he paid, and recover as their substitute the value of what he paid.

This agrees with what is said in *Davis* v. *Commissioners of Stokes*, at this term.

The creditors of the county could certainly assign their claims, and their being paid in the manner stated, ought not in equity to be regarded as an extinguishment. Equity will consider the money lender as an assignee of the original debt.

Upon the principles here stated, every person who furnishes labor or materials upon a contract with county commissioners takes on himself the burden of showing that the debt was fairly contracted, and was for a purpose within the scope of their powers. And every one who lends money to county commissioners, is bound to show that it was faithfully applied to pay *such* debts, when he will be permitted to stand in the place of the creditors.

4. The rule for ascertaining the value of what the plaintiff paid would not be the value of the Confederate money loaned by him as fixed by the agreement in 1864, for that contract, as we have seen, was void.

There is, under the circumstances of this case, no practicable rule for ascertaining the value, except by the legislative scale.

We think the plaintiff is entitled to recover according to that scale, unless he is barred by the statute of limitations.

5. He is barred, unless what took place between his counsel and the defendants, makes it against equity and good conscience for them to plead the statute. We are of opinion that it does so make it. When the plaintiff, through his counsel, proposed to the county commissioners that his claim should abide the result of a trial in the suit of Austin against them upon a similar claim, there was no dissent expressed. The commissioners accepted service of a summons issued at the instance of Austin, which seems to have been a part of the plan for an economical determination of his claim, and that

of the plaintiff, and left the plaintiff under the belief that his proposition had been accepted. That no formal note was taken, and no record of the acceptance of the proposition made, was not decisive. The law that a record shall be kept, of all resolutions and acts of the commissioners is directory only. It ought always to be observed, and it is perhaps penal to neglect it, but it is not essential to the validity of their acts. Otherwise persons dealing with them who have no means of knowing whether a record is made or not, might be deceived and injured.

The assent of defendants to this proposition was equivalent to an agreement, that the time which should thereafter elapse, until the trial and determination of Austin's suit, should not be counted. Austin's suit was never tried, but was compromised by the parties to it.

The plaintiff was entitled to have until the next regular meeting of the commissioners after he was informed of the compromise, before he could be considered *in moro*, so that the statute could run. Deducting this time of permitted delay, the plaintiff's claim is not barred. Judgment for the plaintiff according to the legislative scale, for the value of Confederate money. The judgment being partly affirmed, and partly reversed, each party will pay his own costs in this court.

PER CURIAM.                    Judgment accordingly.