JESSE W. JACKSON v. W. N. PARKS.

(Filed 18 October, 1939.)

1. Trial § 22b—

    Upon a motion to nonsuit, the evidence will be considered in the light most favorable to plaintiff, and only the evidence favorable to plaintiff will be considered.

2. Appeal and Error § 40e—

    Where the allegations and evidence are sufficient to show an actionable wrong committed by defendant against plaintiff, judgment sustaining defendant's motion to nonsuit will be reversed on appeal, and it is unneces-

sary to determine whether plaintiff's cause of action is founded upon malicious prosecution or malicious abuse of process.

**3. Limitation of Actions § 2e—**

It appeared that plaintiff's cause of action based upon the alleged wrongful and unlawful act of defendant in swearing out a warrant against plaintiff charging plaintiff with larceny, accrued within three years prior to the issuance of summons in this suit. *Held:* Plaintiff's cause of action was not barred by the statute of limitation, C. S., 441 (5).

**4. Process § 16—**

Evidence of malice on the part of defendant against plaintiff, and that defendant gave alleged false information to a third person who procured plaintiff's detention in an insane asylum *is held* sufficient to connect defendant with the alleged wrongful detention of plaintiff.

**5. Limitation of Actions § 2g—**

It appeared that plaintiff's cause of action based upon the alleged wrongful act of defendant in causing plaintiff's detention in an insane asylum was instituted less than one year from the date plaintiff was discharged as sane. *Held:* Plaintiff's cause of action was not barred by the statute of limitation, C. S., 443 (3).

**6. Limitation of Actions § 7—**

Plaintiff's cause of action was based upon the alleged wrongful act of defendant in causing plaintiff's detention in an insane asylum. *Held:* Defendant will not be allowed to take advantage of his own wrong, and as to defendant, plaintiff was *non sui juris* for the period during which plaintiff was detained, and the statute of limitations did not run against plaintiff's cause of action during that period, C. S., 407.

APPEAL by plaintiff from *Bone, J.,* at March Term, 1939, of WAYNE. Reversed.

Plaintiff brought this action to recover of the defendant damages alleged to have been caused by the conduct of defendant in unlawfully and maliciously causing his arrest upon a false charge of larceny and unlawfully and maliciously procuring his confinement in an insane asylum, all for the purpose of harassing, persecuting and punishing plaintiff, and preventing him from effectively asserting his legal rights as tenant against the defendant landlord.

The plaintiff, a colored man, was minister of a local church for a long term of years, during which the church building was erected and he continued to serve as pastor and minister; he was also a colporteur evangelist, a carpenter, a brickmason and farmer. His wife testified at the trial that they had "nine head of living children." Plaintiff earned from his various activities about $40.00 per week.

He became a tenant of the defendant Parks in 1935, raising a crop that year and settling for his dues to the landlord. The evidence tends to show that the defendant took charge of all of plaintiff's crop, assum-

ing to do so as landlord, and plaintiff was compelled to bring an action at law to compel defendant to settle with him, upon the final hearing of which he recovered judgment against the defendant. While this suit was pending, and shortly after it was instituted, the defendant Parks made a sworn complaint and procured the arrest of the plaintiff under a warrant charging him with the larceny of the seed from two bales of cotton. Upon the trial the defendant Parks admitted that he had given the plaintiff permission to sell the seed and pay for the picking of the cotton. The case was dismissed as malicious and frivolous. Before this trial, on a request of Jackson for one day's continuance to prepare his case, the defendant demanded that Jackson be required to give a justified bond or be locked up. A witness for plaintiff testified: "Mr. Parks came into my office before the hearing and arbitration and made the statement that Jackson had been on his place for three years and that he had gotten smart; he had been settling as he, Parks, wanted to settle before; he had gone now and issued summons and brought him into court, also got a tenant, Copney, who had been with him two years, to bring him into court, and Mr. Herring that had been with him nine years, got him to sue him; and that Jackson was responsible for it; that he was going to run Jackson and Copney and Herring off, that they had been living there before and settling as he said, and as for Jackson being responsible for all of this he was going to persecute, prosecute him, was going to run him crazy, was going to starve him and his family to death."

As to further allegations of his complaint, the plaintiff testified: "On the night of 7 January, 1936, I was sitting on my bed and these two white men opened the door and came in. I was confined to the State Hospital during the year 1936. I was taken there and put in there on the 9th of January, 1936, and I remained there four days. . . . After I was discharged from the hospital four days after I was taken there on January 9, 1936, I was later confined in the State Hospital. This occurred on January 9, 1937, the same day of the month both times. I remained in confinement this last time six months and twenty-one days to the best of my recollection. I was released on July 29, 1937."

The defendant admitted "reporting" to his nephew, H. B. Gardner, "what they said about the man in the neighborhood" prior to the arrest and detention of plaintiff in a lunacy proceeding. Gardner made the complaint and prosecuted the proceeding. The defendant also admitted calling the sheriff, and testified "they went out and got him that night."

There is evidence tending to show that when the plaintiff was released from the insane asylum, after only four days detention, the defendant Parks took the matter up by way of protest with Dr. Linville, the superintendent. "I called H. B. Gardner when Mr. Parker phoned

Dr. Linville to get him. I didn't see the sheriff much. I talked to H. B. I couldn't hear right good over the phone so I asked Mr. Parker to call for me and he talked to Dr. Linville." He referred to Mr. Parker as his attorney.

The second detention of plaintiff in the State Hospital for the Insane lasted nearly seven months, that is, from 9 January, 1937, to 29 July, 1937, and during this time there was no jury hearing on his sanity. He was discharged as sane, and there is evidence tending to show he was actually sane during the whole period.

The evidence tends to show that plaintiff was discharged from his pastorate because of his confinement in the asylum, and he is now broken in health and unable to provide adequately for his family.

From a judgment of nonsuit plaintiff appealed.

*Scott B. Berkeley, Sutton & Greene, and Allen & Allen for plaintiff, appellant.*

*Fred P. Parker, Jr., and Paul B. Edmundson for defendant, appellee.*

SEAWELL, J. Upon a motion to nonsuit, the evidence must be taken in the most favorable light to the plaintiff (*Smith v. Coach Line,* 191 N. C., 589, 132 S. E., 567, and cases cited), and the above statement of plaintiff's evidence is made upon that principle. We do not deem it necessary, for the purpose of decision, to deal with the rebutting evidence. That is a matter for the jury.

There seemed some confusion in the argument of this case as to whether plaintiff's cause of action must be considered as arising out of malicious prosecution or malicious abuse of process; and it was strongly urged upon the Court that plaintiff was insisting here upon the latter view, whereas, in the court below, he depended on the former, thus changing the theory of the case between the trial and review in the appellate court. These refinements do not concern us at this stage of the case. We do not see how a choice either way in technical nomenclature could shorten the arm of the Court in its attempt to reach justice between the parties. There is sufficient in the complaint and in the evidence to be submitted to the jury, however the alleged mistreatment of the plaintiff may be legally tagged, growing out of his first prosecution, and also sufficient, we think, in connection with his alleged unlawful imprisonment in the State asylum for the insane.

The statute of limitations cannot be successfully invoked against the first suggested cause of action, which clearly accrued within the three years prior to the issuing of summons in this case. C. S., 441 (5).

As to the liability of the defendant growing out of the alleged detention of the plaintiff in the State Hospital, it was argued that there was

no evidence to connect him with the second detention. With this we do not agree. Passing, then, to the application of the statute of limitations to this cause of action, we find that the plaintiff was discharged as sane 29 July, 1937, and this action was begun 20 July, 1938. The year had not elapsed since his discharge. C. S., 443 (3). Considering the evidence in the light most favorable to the plaintiff, the defendant during this period had managed to deprive the plaintiff of his legal status as a sane person and is estopped from pleading the statute of limitations for that period of time. *Daniel v. Comrs. of Edgecombe,* 74 N. C., 494; *Haymore v. Comrs.,* 85 N. C., 268; *Whitehurst v. Dey,* 90 N. C., 542. He cannot be permitted to take advantage of his own wrong, and as to him the plaintiff was *non sui juris* and his rights unaffected by the statute. C. S., 407 (2).

The judgment of the court below is

Reversed.