CARPENTER, BAGGOTT & CO. v. W. M. HANES.

(Filed 25 November, 1914.)

1. Contracts, Wagering — Cotton Futures — Pleadings—Counterclaim—Malicious Prosecution—Abuse of Process.

Where action is brought here to recover the purchase price of cotton and commissions thereon by a New York concern upon a contract made there, and the defendant sets up our statute against wagering contracts of this character and pleads as a counterclaim that he has been damaged by reason of attachment proceedings which had been sued out in an action brought by the plaintiffs in New York, but where he had nothing

which was subject to the writ, and thereunder no levy had been made, it is *Held*, that the counterclaim is not one arising from an abuse of the process, it appearing that there has been no illegal use of it, but for a malicious prosecution of the New York action, requiring that the plaintiff allege and show its termination or that his person or property has been interfered with; and failing in this, the defendant's demurrer to his cause of action should be sustained. The principles relating to abuse of process and malicious prosecution discussed by WALKER, J.

### 2. Pleadings—Counterclaim—Demurrer—Voluntary Nonsuit.

It appearing in this case that the plaintiff's demurrer to the defendant's alleged counterclaim should have been sustained, thus depriving the defendant of any right to affirmative relief, it is held that the plaintiff's motion for a voluntary nonsuit should have been granted without leave to the defendant hereafter to amend his answer in respect thereto.

### 3. Courts—Lex Loci Contractus—Statutes—Extraterritorial Effect—Wagering Contracts—Cotton Futures—Public Policy—Conflict of Laws.

Our statute prohibiting dealing in wagering contracts in cotton futures has no extraterritorial effect, and ordinarily the law governing a contract is that wherein the contract was made; and while our courts may not enforce here a contract declared void by our statutes or contrary to our public policy, it has no power to interfere in any manner with the enforcement by the courts of another State of a contract valid according to its own laws, or with their action to determine their validity.

APPEAL by plaintiffs from *Devin, J.,* at March Term, 1914, of FORSYTH.

The plaintiff complained as follows:

1. Plaintiffs above named, under the firm name of Carpenter, Baggott & Co., were at the times hereinafter mentioned engaged (in the ordinary course of their business) in buying and selling cotton for a commission.

2. Defendant W. M. Hanes is a citizen and resident of the State and county aforesaid, and was at the times hereinafter mentioned engaged (in the ordinary course of his business) in the manufacture of cotton.

3. On and between 12 June, 1912, and 27 September, 1912, plaintiffs purchased and sold for defendant, and at his special instance and request, 5,000 bales of cotton.

4. Plaintiffs, at the special instance and request of defendant, paid out for defendant, in and about the purchase and sale of said 5,000 bales of cotton, the sum of $11,300.

5. Defendant agreed to pay plaintiffs the sum of $15 per 100 bales as plaintiff's commission for buying and selling said cotton, or the sum of $750 for plaintiff's services in buying and selling said 5,000 bales of cotton.

6. Defendant has paid plaintiffs, on said aggregate indebtedness of $12,050, the sum of $9,305, but has failed and refused to pay the balance due plaintiffs, towit, $2,745.

Wherefore plaintiffs demand judgment that they recover of defendant W. M. Hanes the sum of $2,745, with legal interest from 27 September, 1912, and the costs of this action.

Defendant answered, denying generally the allegations of the complaint, and setting up three counterclaims. In the first he averred that he had requested plaintiffs, cotton merchants of New York city, to sell for his account for future delivery, according to the rules of the New York Cotton Exchange, a lot of cotton, and that he deposited a large sum of money to cover margins. That they were not, and were not intended to be, real sales, but the transactions were to be settled upon a basis of the rise or fall of prices. It all amounts to this, that they were dealing in cotton futures—gambling transactions, pure and simple. He prayed judgment for $3,000, amount of money deposited with plaintiffs as margins. In a second counterclaim he alleges that plaintiffs unlawfully and in violation of the contract closed out certain purchases made by them for the defendant, for which he claims $3,000 as damages. As a third counterclaim he alleges that plaintiffs had unlawfully and wrongfully brought suit in New York for the same cause of action as they allege herein, and wrongfully and maliciously sued out a writ of attachment "for the purpose of injuring, harassing, and embarrassing defendant, and not for the purpose stated in the writ, but to force defendant to pay a debt to them which he did not owe, and which was not collectible in law or in equity." He alleges further in the counterclaim "that defendant had no property or effects in New York at the time the warrant of attachment was issued, and at the time of its alleged service, which was subject to levy or attachment for the said cause of action of the plaintiffs, and this was well known to them." He then alleges that the court of New York had no jurisdiction of plaintiff's action, and there was no service of the process in the same. He asked that plaintiffs be restrained and enjoined in this action from prosecuting the New York suit, in order to prevent circuity and multiplicity of actions and useless expense.

Plaintiffs demurred to the several counterclaims, and upon the ground that they were invalid and did not state any cause of action against them, or any which could be prosecuted in this action, and they asked to be allowed to take a nonsuit. The court sustained the demurrer as to the first and second of the counterclaims, from which defendant did not appeal, and overruled it as to the third counterclaim, and refused the plaintiffs' leave to take a nonsuit, and to each of these rulings the plaintiffs excepted, and appealed.

*Joseph E. Johnson and Manly, Hendren & Womble for plaintiff.*
*Louis M. Swink for defendant.*

WALKER, J., after stating the case: We need consider but the single question, whether the third counterclaim is a good one in law, assuming the truth of the facts alleged, and not any conclusion of law from them which is therein stated, for if the facts as alleged do not constitute a valid counterclaim, the demurrer should have been sustained, and this would clear the way for plaintiff's voluntary retirement from the court by way of a nonsuit, which it was his right to do, there being nothing left in the answer requiring his further presence, except the prosecution of his own cause, which he had a right to abandon by entering a *non sequitur,* as no other affirmative relief was prayed against him. The action is really not one for an abuse of process, but for a malicious prosecution of the New York action and the wrongful suing out of the attachment. An abuse of process is some unlawful use of the process for the accomplishment of some end foreign to the purpose for which it may be issued. This subject has been fully and exhaustively considered by this Court in several cases. *R. R. v. Hardware Co.,* 138 N. C., 174; *Jackson v. Tel. Co.,* 139 N. C., 356; *R. R. v. Hardware Co.,* 143 N. C., 54; *Ludwick v. Penny,* 158 N. C., 104; *Wright v. Harris,* 160 N. C., 542.

In *R. R. v. Hardware Co.,* 143 N. C., at p. 58, the *Chief Justice* said: "It may be well to note here the distinction between an action for malicious prosecution and an action for abuse of process. In an action for malicious prosecution there must be shown (1) malice and (2) want of probable cause, and (3) that the former proceeding has terminated. *R. R. v. Hardware Co.,* 138 N. C., 174. In an action for abuse of process it is not necessary to show either of these three things. By an inadvertence it was said in the case last cited that want of probable cause must be shown. 'If process, either civil or criminal, is willfully made use of for a purpose not justified by the law, this is an abuse for which an action will lie.' 1 Cooley Torts (3 Ed.), 354. 'Two elements are necessary; first, an ulterior purpose; second, an act in the use of the process not proper in the regular prosecution of the proceeding.' *Ib.,* 355; 1 Jaggard Torts, sec. 203; Hale on Torts, sec. 185. 'An abuse of legal process is where it is employed for some unlawful object, not the purpose intended by law. It is not necessary to show either malice or want of probable cause, nor that the proceeding had terminated, and it is immaterial whether such proceeding was baseless or not.' *Mayer v. Walter,* 64 Pa. St., 283. The distinction has been clearly stated. *Jackson v. Tel. Co.,* 139 N. C., 356." Judge Cooley tells us that a suit for malicious prosecution will lie.

We said in *Wright v. Harris, supra,* that an abuse of process consists in its employment for some unlawful purpose, which it was not intended by the law to effect, and amounts to a perversion of it, and that the illegality or maliciousness of the proceeding leading up to it does not

determine its abuse in law as much as the unlawful or oppressive use of it, after it is issued, for the purpose of coercing or harassing the defendant in some way, citing numerous cases; and, referring to *Ludwick v. Penny, supra,* and to the principle as stated by Judge Cooley, we said: "Speaking of the malicious abuse of process, he (Judge Cooley) distinguishes it from a malicious civil suit, where there is an interference with property or business, as follows: 'If process, either civil or criminal, is willfully made use of for a purpose not justified by the law, this is abuse for which an action will lie. The following are illustrations: Entering a judgment and suing out an attachment for an amount greatly in excess of the debt; causing an arrest for more than is due; levying an execution for an excessive amount; causing an arrest when the party cannot procure bail and keeping him imprisoned until, by stress thereof, he is compelled to surrender property to which the other is not entitled. In these cases, proof of actual malice is not important, except as it may tend to aggravate damages; it is enough that the process was willfully abused to accomplish some unlawful purpose. Two elements are necessary to an action for the malicious abuse of legal process: First, the existence of an ulterior purpose, and, second, an act in the use of the process not proper in the regular prosecution of the proceeding. Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process. In a suit for malicious abuse of process it is not necessary that there should have been a termination of the suit in which the process was issued, nor a want of probable cause for the suit.' Cooley on Torts, p. 354 *et seq.* The distinction is clear: one consists in commencing and prosecuting a suit maliciously and interfering with property or business, and the other consists in the willful, unlawful, and wrongful use of the process itself."

Defendant cannot recover on his last counterclaim for malicious prosecution, as he does not allege the termination of the former suit in New York (*Brinkley v. Knight,* 163 N. C., 194), nor that his person or any of his property has been interfered with, and he cannot recover for malicious (so called) or wrongful abuse of process, because, as it appears, there has been no illegal use of it.

In this connection we find a very good statement of the law in 32 Cyc., 541, 542, 543, which we reproduce substantially: Courts will never permit the wrongful use of their process; and in case such use is attempted, the party will not be permitted to gain an advantage by reason of such wrongful act. But the law goes further, and gives the person aggrieved by the wrongful act a cause of action against the offending party. This action for the abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue. It has been said that two elements are necessary, an unlawful and ulterior purpose

and also an act done in the use of the process not proper in the regular prosecution of the proceeding. But it seems doubtful whether both of these elements must always be present. It has been held that "a malicious abuse of legal process consists in the malicious misuse or misapplication of that process to accomplish some purpose not warranted or commanded by the writ." And it has also been said that "whoever makes use of the process of the court for some private purpose of his own, not warranted by the exigency of the writ or the order of the court, is answerable to an action for damages for an abuse of the process of the court." . . . "Similar expressions occur in many cases. None of these statements include the second element above set forth. On the other hand, the second element alone has been held sufficient to impose liability, as where a writ is executed against property in an unreasonable and oppressive manner; where, after arrest upon civil or criminal process, the party arrested is subjected to unwarrantable insult or indignities, is treated with cruelty, is deprived of proper food or shelter, or is otherwise treated with oppression and undue hardships; or where a summons is served in an unreasonable, cruel, and oppressive manner. Although some cases hold that malice is a fact necessary to be shown in an action for abuse of process, and while the action is often denominated one for the "malicious abuse of process," it is probable that malice is not an essential element of the cause of action, and becomes important only when exemplary damages are sought. The act constituting the abuse must, however, be shown to have been willful. Under no circumstances will malice alone give a right of action. Nor will the action lie against one who in good faith has sought to properly enforce a supposed right. The action is distinguished from one for malicious prosecution in that it is founded upon the use, not the issue, of the process; it need not appear that the action was instituted without probable cause, and it need not appear that the action has terminated, but these distinctions are not observed by all the courts."

We refer to this statement for the purpose of remarking that the doubt expressed as to the necessity for the coexistence of both elements named may be removed if we regard the unlawful and wrongful use of the process as implying the illegal and ulterior purpose to be subserved, if that be essential to create the actionable wrong. But we need not enter more at large into a discussion of this question, as we are satisfied that plaintiffs have not been guilty of abuse of the process issued in their New York action, upon defendant's own showing.

"An action for damages," says Jaggard (1 vol., pp. 632; 634), "lies for the malicious abuse of lawful process, civil or criminal, even if such process has been issued for a just cause, and is valid in form, and the proceeding thereon was justified and proper in its inception, but injury

arises in consequence of abuse in subsequent proceedings." *Jackson v. Tel. Co.*, 139 N. C., 347. There must, therefore, be an abuse of the process itself, and it is not sufficient to show merely a bad intent or a wicked purpose, if the process be dealt with in a perfectly lawful way. The bad intent must finally culminate in the abuse, for it is only the latter which is the gist of the action.

Applying these principles, we find that the plaintiff was prosecuting his suit in the New York court in a regular way and according to the established procedure of the court. There was nothing done abnormally or out of the ordinary. It may be that by the law of that State the cause of action was a valid one. Nothing appears to show the contrary. Defendant sets up our statute, but it has no extraterritorial effect. It also may be that it is illegal there. The law of that State governs, as the contract was made there, was enforcible there, and the action to recover upon it was pending there. It would be an anomaly to hold that we could, in an action pending here, declare an action pending there to be illegal, because the cause of action, though perhaps good there, is illegal here. Our statute may declare it illegal, and if so, we would not enforce it in our courts. The validity of a contract, or the question whether the contract is a legal or an illegal one, is judged by the law on the subject in the State or country in which the contract is entered into, the general rule being that a contract good where made is good everywhere, and a contract invalid where made is invalid everywhere. The general doctrine that a contract valid where made is valid also in the courts of any other country or State where it is sought to be enforced, even though had it been made in the latter country or State it would be illegal and hence unenforcible, is subject to several exceptions: (1) Where the contract in question is contrary to good morals; (2) where the State of the forum or its citizens would be injured by the enforcement by its courts of a contract of the kind in question; (3) where the contract violates the positive legislation of the State of the forum, that is, is contrary to its Constitution or statutes; and (4) where the contract violates the public policy of the State of the forum. 9 Cyc., pp. 672, 674.

"It may be laid down as the settled doctrine of public law that personal contracts are to have the same validity, interpretation, and obligatory force in every other country which they have in the country where they were made. The admission of this principle is requisite to the safe intercourse of the commercial world, and to the due preservation of public and private confidence; and it is of very general reception among nations. Parties are presumed to contract in reference to the laws of the country in which the contract is made, and where it is to be paid, unless otherwise expressed; the maxim is, that *locus contractus regit actum,* unless the intention of the parties to the contrary be clearly

shown.   The rule stated in Huber relative to contracts made in one country and put in suit in the courts of another is the true rule, and one which the courts follow, viz., the interpretation of the contract is to be governed by the law of the country where the contract was made; but the mode of suing and the time of suing must be governed by the law of the country where the action is brought.   It is, however, a necessary exception to the universality of the rule, that no people are bound or ought to enforce, or hold valid in their courts of justice, any contract which is injurious to their public rights, or offends their morals, or contravenes their policy, or violates a public law."   2 Kent's Commentaries (13 Ed.), p. 458.

"It is a familiar principle of the common law that the *lex loci* is the general rule adhered to by courts in construing contracts, questions of marriage, legitimacy, and rights of succession to property.   It has been adopted by so many States that it now constitutes an essential portion of what is denominated international jurisprudence.   It has lost none of its efficacy as a rule by this; but, on the contrary, it has made thereby a bond of amity between nations; yet it is subject to a great controlling idea, that upon comity it will not be enforced if it involves anything immoral, contrary to general policy, or violative of the conscience of the State called on to give it effect. . With this subordination, comity requires that we should give effect to the laws of any other State; not otherwise." *Eubanks v. Banks,* 34 Ga., 415.

The pleadings in the case are not before us, nor is the law of New York, and we cannot, therefore, say whether the contract, as alleged therein, is violative of the law of that State or of the common law, which is presumed to exist there, in the absence of proof that it is not. It may be void at the common law (*Williams v. Carr,* 80 N. C., 295), or it may be valid by the same law as there construed, or the plaintiff may be able to show that the contract was not a gambling one, but that the rules of the Cotton Exchange required actual delivery.   Its validity, as we have seen, does not depend upon the provisions of our law which defendant pleads and upon which he relies.

But we need not decide upon these questions, as the court of that State, upon the papers, issued its process regularly.   The plaintiff was entitled to an attachment or garnishment in order to secure the payment of his alleged debt in case he recovered in the action, the proceeding being merely ancillary, and he may have obtained judgment in the action if the contract was valid there, or if not, and the defendant failed to plead its invalidity.   The decisive and concrete question is this, Did the plaintiff wrongfully abuse the process *after* it was duly issued, and of this we find no sufficient allegation, and it looks as if defendant cautiously avoided making one.   There was no arrest of his person, or interference

therewith, nor was there any taking of his property or obstruction of his full enjoyment thereof. The intent to arrest or to attach, or even to garnish, will not do, unless it is executed, nor will an attempt answer the purpose, unless carried out, or unless, in the course of the attempt to do the wrong, there is at least some tangible or appreciable invasion of his personal or property rights. We see nothing of the kind here, but, on the contrary, this is nothing more than a suit for the malicious prosecution of an action where there has been no illegal interference with the person or the property. Such a suit will not lie. It is said in 26 Cyc., 14: "In harmony with the English view of the remedy, some American authorities hold that no action will lie for merely commencing a civil action, however unfounded the suit may be, in the absence of interference with person or property or of special grievance differentiated from and superadded to the ordinary expenses of the suit. The usual reasoning is that the remedy of a person sued is to tax his costs, whereby he will not be stimulated to interminable litigation based upon constructive harm." Our Court is assigned to the class holding to this doctrine and following the English rule. In *Ely v. Davis,* 111 N. C., 24, this Court announced the true principle, and when "substantially the same action," as stated by it, was again before this Court, under the title of *Terry v. Davis,* 114 N. C., 31, *Justice MacRae,* with his usual force and clearness, and also with some positiveness, thus restated the rule, at p. 32 : "We then sustained the demurrer upon the ground that there was no allegation in the complaint of want of probable cause, nor statement of facts which, if proved, would establish the want of probable cause in the alleged malicious charge of fraud and false representation. We proceeded further to intimate (in that case), in order that the plaintiffs might understand that this litigation ought to cease, our opinion that an action will not lie for malicious prosecution in a civil suit unless there was an arrest of the person or seizure of property, as in attachment proceedings at law, or their equivalent in equity, or in proceedings in bankruptcy or like cases where there was some special damage resulting from the action and which would not necessarily result in all cases of the like kind." The case of *Davis v. Gully,* 19 N. C., 360, is criticised in *Ely v. Davis,* and overruled so far as it conflicted with the rule as therein stated; but when what was called the "broad statement of the Court" in *Davis v. Gully* is examined, we do not think it was intended to have so wide a scope, but to be restricted within the correct limit, and this will appear when we consider that the action in *Davis v. Gully* was upon a bond given by the complainant in a suit in equity, and upon his suing out a writ of sequestration, the condition of which was that he would pay respondent "all damages which shall be *recovered* against plaintiff *in any suit or suits which may be brought against him* for wrongfully suing out

such writ." When *Judge Gaston* said, in passing, "that an action on the case lies against any person who maliciously and without probable cause prosecutes another, *before any tribunal,* and thereby subjects him to an injury, either in his person, property, or reputation," he undoubtedly was referring to actions of the kind he was then dealing with, and in which there had been such an actual injury to or interference by sequestration with one of the enumerated rights entitled to the protection of the law. He could not have referred to an ordinary action, where there is no such element, and where the loss or injury, if any, is compensated only by the taxation of costs against the losing party, and otherwise is *damnum absque injuria.* Broom's Legal Maxims (6 Am. Ed., 1868), pp. 159, 160. How it would be if one, by prosecuting an ordinary action, maliciously attempts to put a cloud upon defendant's title, or to blacken or malign his character, we need not decide. The general law of slander and libel may sufficiently deal with such cases.

There is not the slightest foundation, in law, for this counterclaim to rest on. Plaintiff commenced and prosecuted in the court of another State an ordinary action upon a promise to pay money in advance, it may be upon an unlawful transaction, but he may have anticipated, and not unreasonably, that defendant would not plead the illegality, but would act upon that kind of honor which is supposed, by a sort of tacit consent, to prevail in such case, and to operate as a deterrent and preventive of such a course. The law permits the defendant to set up such a defense, and being true to itself, even encourages·it, in order to punish a violation of its own mandate and as an example to others who are disposed to commit such offenses; but this is not done for the defendant's sake, but for its own, as he is regarded as being equally in fault with the other offender—*particeps criminis.* Both parties are gamblers by the moral standard and in the view of the law, and neither is entitled to any of its consideration, and gets none, except in so far as one of the guilty parties may receive an incidental benefit, and the other suffer a loss, from the enforcement of its penalties or forfeitures.

We have not discussed the question whether the alleged counterclaim, sounding in tort, can be set up "as arising out of the contract, or transaction, set forth in the complaint, as the·foundation of the plaintiff's claim or connected with the subject of the action." Revisal, sec. 481, subsec. 1. Plaintiffs say it is not, and cite *Kramer v. Light Co.,* 95 N. C., 277; *Smith v. French,* 141 N. C., 9; *Arthur v. Thompson,* 97 Ky., 210, and *Davidson v. Land Co.,* 121 N. C., 146; but it is sufficient to let our decision rest upon the other clear and sound view of the case, without deciding this question.

The court should have sustained the demurrer throughout, and then permitted the plaintiff to take the nonsuit, and this judgment will be

entered in the court below, without permitting any amendment, as plaintiff had already asked for the nonsuit, and cannot now be deprived of it by any change in the answer. He cannot be called back after once he has asked to depart and is entitled, at the time, to do so.

Reversed.