BARNHILL, J., dissenting.
STACY, C. J., and WINBORNE, J. concur in dissent.
This was a civil action tried at the March Term, 1937, of Cleveland County Superior Court. The plaintiff, for his first cause of action, alleged that the defendant, maliciously and without probable cause, caused and procured the plaintiff to be indicted by swearing out a warrant charging the plaintiff with the crime of false pretense, and that the defendant prosecuted the plaintiff before the recorder of Cleveland County, N.C. and caused him to be held under a $200.00 bond for his appearance to the Superior Court of Cleveland County, N.C. and that the solicitor refused to send a bill to the grand jury for said offense; and that the purpose of defendant was to use the process of the courts to *Page 449 
oppress the plaintiff and force the plaintiff to pay the defendant money which he did not owe, and that because of same the plaintiff had been damaged.
For the second cause of action the plaintiff alleged that defendant maliciously and falsely, with intent to oppress, abuse, and malign plaintiff, did unlawfully, willfully, and feloniously charge that the plaintiff committed a crime of larceny after trust, and caused the plaintiff to be indicted before the grand jury on said charge, and that the defendant employed counsel to prosecute said charge. That said charges of grand larceny and false pretense were maliciously and falsely spoken and uttered by the defendant with intent to harass, vex, annoy, and injure the standing and reputation of the defendant in the community, and that on this bill of indictment, after B. A. Smith testified, the court instructed the jury to enter a verdict of "not guilty." The plaintiff elected to try the case, and the case was tried on the theory of "Abuse of Process."
The allegations of the complaint and the evidence on the trial were to the effect: That plaintiff was 33 years old and had a wife and two children. His general reputation was good, and he had never been indicted before. Plaintiff had a transaction with defendant in regard to the purchase of some real estate from defendant. It was a 25-foot lot with a building on it which had been half torn down. Plaintiff was to fix it up and purchased it for $650.00. There were some stools in the building fastened to the floor, but in the trade no exception was made about them. Plaintiff was to pay $5.00 a week until he had paid $250.00, and the balance of $400.00 was to be financed through the Building and Loan Association. He repaired the building and paid the $5.00 a week until the $250.00 was paid. Plaintiff testified: "I told him (defendant) if he would have the deed fixed I would pay the balance. He came down and told me he had the deed fixed, and I went and he handed me the deed and I counted out the balance, $400.00, and he said, `Those stools, they don't belong in with the building.' He says, `You will have to pay extra for those.' I says, `Mr. Smith, I bought the building for $650.00 like it was and I was supposed to fix it up. I paid for having it fixed up and $5.00 a week until I paid you $250.00 and paid you the other $400.00, and you give me the deed,' and I said `I think it is paid for. That is the amount I was supposed to pay.' And he said, `There is interest on that, too.' Thirty-nine dollars and something I believe he said. I says and told him how I was supposed to pay it and I had paid it, and he says, `Well, you can't take that deed off from here without you finish paying for it; pay the balance for the stools, and interest.' I says, `Well, I have done paid you and you gave me the deed,' and I says, `It belongs to me.' He says, `If you take that *Page 450 
deed off I will have you arrested.' I says, `You will have to have me arrested. I paid for it and it belongs to me'; and he went and swore out a warrant for me charging me with false pretense."
Plaintiff was arrested on the warrant and kept in custody several hours until he gave bond. The case was heard before the recorder, plaintiff called for a jury, but the recorder said it was out of his jurisdiction and he would have to determine if there was probable cause to bind over to the Superior Court. Plaintiff had no counsel. He testified: "Mr. Smith got up and told about me getting the deed and everything from him, and everything he would say, why the recorder would agree with him and tell him that was right. The recorder stopped him and told him how he could still have the deed set aside, and it looked like they were sort of making a joke out of me, laughing and joking and winking. The recorder and Smith's attorney and Mr. Smith were laughing. The attorney representing Mr. Smith and Mr. Smith were laughing, the attorney represented Mr. Smith in prosecuting me. Q. They were making a monkey out of you? Ans.: Looked like they were; winking at each other. I didn't see Mr. Smith wink at anybody, I saw the recorder wink at him. (The court: Winking is not competent.) The recorder asked me if I had anything to say. I went on the stand. The recorder said, `I want to warn you that anything you say will be held against you.' I said, `I want to go on the stand anyhow.' I got up and told how it was, and he said, `Well, I am going to bind you over anyhow.' He said, `Do you reckon you can get up a $200.00 bond?' I said `I think I can.' He put a $200.00 bond on me and sent it on up to Superior Court. The attorney representing Mr. Smith in prosecuting me made the statement in open court the reason they didn't sue me was because I didn't have nothing, and said they would get me for false pretense and then they could get their money. I appeared at the July Term of Superior Court, and I guess my expenses altogether, going backwards and forwards and attorney fees, were over a hundred dollars. In the Superior Court they changed the charge to larceny, and I was not tried on the charge of false pretense. . . . During the progress of the trial the court ordered a verdict of not guilty after the State's witness, B. A. Smith, testified in the case. . . . I gave him (Smith) $400.00 and he gave me the deed, we were at his store and he had the deed in the safe, and when I paid him he went and got it and gave it to me. . . . I admit he collected all that was in the deed and tried to collect more for it."
A justice of the peace testified: "Some time in the summer of 1936, I don't recall the date, Mr. B. A. Smith came to me for a warrant against Mr. Earl Ledford. Q. Go ahead and state what you told him and what he said. Ans.: He came to me for a warrant; said he wanted *Page 451 
a warrant for Mr. Ledford. I said for what, and he explained it, and I said, `Well, what shall we charge him with?' He said, `Stealing, I guess.' I said, `I don't know if it would be larceny.' `Well,' he said, `my attorney said it would.' I said, `Do you have an attorney employed?' He said `Yes.' I said, `If your attorney thinks it is larceny and will draw the warrant I will sign it, but I don't think it is.' And he went away and he didn't come back to me at all. In a few minutes thereafter he came back with one signed and gave it to an officer, but I don't know what he charged him with."
The issues submitted to the jury and their answers thereto were as follows:
"1. Did the defendant abuse the process of the courts by having plaintiff indicted on 24 June, 1936, as alleged in the complaint? Answer: `Yes.'
"2. What actual damages is the plaintiff entitled to recover of the defendant? Answer: `$500.00.'
"3. What punitive damage is plaintiff entitled to recover of the defendant? Answer: ......."
Judgment was rendered on the verdict. Defendant, at the close of plaintiff's evidence and at the close of all the evidence, made motions in the court below for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions. The defendant excepted and assigned errors and also excepted and assigned error to the judgment as signed, and appealed to the Supreme Court.
We see no error in the judgment of the court below. The charge of the court is not in the record and the presumption of law is that the court below charged the law applicable to the facts. The case was tried in the court below on the theory of "abuse of process." The law in regard to abuse of process is well settled in this jurisdiction.
In Abernethy v. Burns, 210 N.C. 636 (639), we find: "There is this distinction between an action for malicious prosecution and one for abuse of process. In the former it is necessary to allege and to prove three things not required in the latter: (1) Malice; (2) want of probable cause, and (3) termination of proceeding upon which action is based (citing authorities). . . . The distinctive nature of an action for abuse of process, as compared with an action for malicious prosecution, is that the former lies for the improper use of process after it has been issued, and not for maliciously causing process to issue (citing authorities). . . . Speaking to the subject in Klander v. West, 205 N.C. 524, it was said: `In an action for abuse of process it is not *Page 452 
necessary to show malice, want of probable cause, or termination of the action; and two essential elements are the existence of an ulterior purpose and an act in the use of the process not proper in the regular prosecution of the proceeding. The act must be willful. Carpenter v. Hanes,167 N.C. 551.'"
In abuse of process there are two essential elements: (1) The existence of an ulterior purpose; (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding.
The evidence all indicates that the process was used to collect a debt, if any existed, by using the criminal law for that purpose. Defendant said he would have plaintiff arrested if he took the deed without paying the interest. The recorder, on the trial, informed the defendant that he could still have the deed set aside. Defendant's attorney made the statement, in prosecuting plaintiff on the trial in the recorder's court for false pretense, "The reason why they did not sue me, because I didn't have nothing and said they would get me for false pretense and they could get their money." In the Superior Court the charge was changed to larceny. This and other evidence on the trial was sufficient to be submitted to the jury on abuse of process. The process, it appears, was a whip to force the payment of an alleged indebtedness.
Taking the allegations in the complaint and the evidence adduced on the trial, the issue tendered and answered "Yes" will support the judgment "Did the defendant abuse the process of the courts by having plaintiff indicted on 24 June, 1936, as alleged in the complaint?"
The defendant excepted and assigned error to the judgment as follows: "It is thereupon considered, ordered, and adjudged that the plaintiff, Earl Ledford, have and recover of the defendant, B. A. Smith, the sum of $500.00, with interest thereon until paid, together with the costs of the action to be taxed by the clerk and execution will issue accordingly, and upon return of execution unsatisfied in whole or in part, execution will issue against the person of the defendant." This exception and assignment of error cannot be sustained.
Citing again Klander v. West, 205 N.C. 524 (526), we find it there written: "To justify an execution against the person in an action for malicious prosecution there must be affirmative finding by the jury of express or actual malice. Watson v. Hilton, 203 N.C. 574; Harris v.Singletary, 193 N.C. 583; Swain v. Oakey, 190 N.C. 113, 116. In an action for abuse of process it is not necessary to show malice, want of probable cause, or termination of the action; the two essential elements are the existence of an ulterior purpose and an act in the use of the process not proper in the regular prosecution of the proceeding. The act must be willful. Carpenter v. Hanes, 167 N.C. 551. In the absence of a finding of express malice or the willful abuse of process the *Page 453 
person of the defendant cannot be taken in execution." Ledford v. Emerson,143 N.C. 527; Michael v. Leach, 166 N.C. 223; Foster v. Hyman, 197 N.C. 189; N.C. Code 1935 (Michie), secs. 767, 768.
Article I, sec. 16, of the Constitution of North Carolina, provides "There shall be no imprisonment for debt in this State except in cases for fraud." This proviso of the Constitution has no application to actions oftort, but is confined to actions arising ex contractu. Long v. McLean,88 N.C. 3.
In the present case the jury found abuse of process, which was willful according to the allegations of the complaint. A tort action "injury to person or property." Sec. 768, supra.
For the reasons given, in the judgment of the court below, we find
No error.