MAUDE BARNETTE, UNMARRIED, v. MRS. ANNIE LAURIE WOODY, WIDOW, DR. LESLIE B. HOHMAN AND DR. G. W. GENTRY.

(Filed 30 June, 1955.)

**1. Appeal and Error § 6c(1)—**

Exceptions which appear nowhere in the record except under the assignments of error are ineffectual, since an assignment of error must be supported by exception duly noted.

**2. Same—**

Exceptions not set out in the case on appeal and numbered as required by Rule of Practice in the Supreme Court No. 21, need not be considered on appeal.

**3. Appeal and Error § 23—**

Where the grouping of the assignments of error refers to the exceptions, but the exceptions do not appear on the page indicated, so that it would require a voyage of discovery through the record to ascertain upon what

the appellant is relying to show error, such exceptions will not be considered.

**4. Appeal and Error § 6c (1)—**

G.S., 1-206, as amended, does not eliminate the necessity for setting out and numbering the exceptions relied upon in the statement of case on appeal.

**5. Appeal and Error § 6c(2)—**

In the absence of any exceptions, or where they have not been preserved as required by the Rules of Court, the appeal itself will be taken as an exception to the judgment, and presents the question of whether the court below committed error in sustaining plaintiff's motion as of nonsuit.

**6. Malicious Prosecution § 14: Process § 17—**

An action for malicious prosecution or an action for abuse of process is not barred until the expiration of three years after the accrual of the cause of action. G.S. 1-52.

**7. False Imprisonment § 3—**

The one year statute of limitations applies to an action for false imprisonment. G.S. 1-54.

**8. Malicious Prosecution § 1: Process § 15—**

The distinction between an action for malicious prosecution and one for abuse of process is that malicious prosecution is based upon malice in causing the process to issue, while abuse of process lies for its improper use after it has been issued.

**9. Process § 15—**

Abuse of process consists in the malicious misuse or perversion of a civil or criminal writ to accomplish some purpose not warranted or commanded by the writ, and is composed of the two elements of the existence of an ulterior purpose and an act in improperly using the process in the regular prosecution of the proceeding.

**10. Malicious Prosecution § 1—**

In an action for malicious prosecution the plaintiff must prove malice, want of probable cause, and termination of the prosecution or proceeding in plaintiff's favor.

**11. Process § 16—**

Where plaintiff's evidence discloses that the process under which she was committed to the State Hospital was used for the purpose for which it was intended and that the result accomplished was warranted and commanded by the writ, the evidence is insufficient to make out a cause of action for abuse of proces.

**12. Malicious Prosecution § 4—**

Evidence in this case *held* insufficient to show malice on the part of defendants in suing out a writ for plaintiff's commitment to the State Hospital.

**13. Conspiracy § 2—**

Evidence *held* insufficient to establish a conspiracy on the part of defendants to procure plaintiff's commitment to the State Hospital for alleged ulterior motives.

**14. Appeal and Error § 40i—**

In passing upon the correctness of judgment as of nonsuit, the Supreme Court may consider evidence excluded by the lower court only when such evidence is competent and erroneously excluded, with preservation of exception to its exclusion.

APPEAL by plaintiff from *Paul, Special Judge,* August Term, 1954, of PERSON.

This is a civil action to recover damages from the defendants. The plaintiff alleges in her complaint that the defendant Mrs. Annie Laurie Woody, sister of the plaintiff, for an ulterior motive, conspired with the defendants Dr. G. W. Gentry and Dr. Leslie B. Hohman, who, for large sums of money, certified to facts necessary to procure the admission of the plaintiff to the State Hospital in Raleigh; that in furtherance of said conspiracy she was committed to the said hospital by the Clerk of the Superior Court of Person County on 21 March, 1950, where she remained until 8 June, 1950. She prays damages, both actual and punitive.

The defendant Mrs. Woody in her answer admits that she is the younger sister of the plaintiff; that she signed an affidavit before the Clerk of the Superior Court of Person County for the commitment of plaintiff to the State Hospital for observation; that supporting affidavits were filed by her codefendants Dr. Gentry and Dr. Hohman. She denies that she entered into any conspiracy with her codefendants, or that she acted with malice and without probable cause. The other defendants likewise filed answers and denied any conspiracy or bad faith in connection with the execution of the affidavits filed by them in the proceeding before the Clerk of the Superior Court. In addition thereto all the defendants, as a further answer and defense, pleaded the one and three years' statutes of limitations as a bar to the plaintiff's action, and also pleaded immunity from any liability in connection with the matters and things alleged in the plaintiff's complaint on the ground that their affidavits were filed in a judicial proceeding and were privileged.

The plaintiff testified that she was 71 years old at the time of the trial below and is the older sister of the defendant Mrs. Woody; that up until 14 November, 1949, the condition of her physical health was such that she was able to work and make her living, doing sewing, handwork and embroidery, taking subscriptions for magazines, and

things like that; that she suffered from some physical disability, namely, her back and a lame hip, having had the lameness in her hip since she was a child; that aside from that her physical condition was such that she kept going all the time and was in pretty good shape; that she was earning her livelihood and was happy and contented and enjoyed the friendship of many friends in the community.  That her parents died in 1930; that between the death of her parents and November, 1949, her relations with her sister Mrs. Woody were that they got along just fine for years; that some time after the death of her parents she became ill and after a stay in the hospital she went to the home of Mrs. Woody, who waited on her uncomplainingly; that during most of the year 1933 she lived with Mrs. Woody and during the years 1934, 1935 and part of 1936 she lived at Sue Bradsher's and that Mrs. Woody paid her board; that most of the time thereafter she lived at the homeplace; that the witness owned one-fifth interest in the homeplace and her sister Mrs. Woody owned the other four-fifths interest; that she rented rooms there and that she received all the rents, Mrs. Woody not receiving "a dollar of the rent money from the time the witness left Mrs. Woody's home until she left the homeplace."  That at the time the witness was sent to the State Hospital she was occupying two rooms in the homeplace and receiving rent of $25.00 per month from the tenant who occupied the other part of the house; that in March or April 1949 when plaintiff remarked to Mrs. Woody that she had heard Mrs. Woody was using her as a dependent on her income tax returns, Mrs. Woody threatened to send her to an institution.

Plaintiff further testified that Dr. Hohman came to her house on 21 March, 1950, and talked with her for a while and that shortly thereafter she was taken to the hospital in Raleigh.  The plaintiff insisted that this was a most perfunctory examination, but Dr. Hohman's evidence, elicited by plaintiff, shows that he had discussed the case with Mrs. Woody on several occasions and had a history of plaintiff.  None of the facts disclosed or statements made to him by Mrs. Woody were ever disputed or contradicted by plaintiff.  Plaintiff also testified that she had known Dr. Gentry for many years; that he was physician to her parents and that she had had him a few times and that the last time she consulted him was in January or February, 1949; that he never examined her as to her mental condition.  She testified that in the early part of 1949 she went to the office of Dr. Gentry and tried to talk to him, but he ordered her out of his office and told her to never come again, and repeated that twice, and that she never went back to his office again.

The plaintiff offered as witnesses numerous local residents, an osteopathic physician and a dentist from Durham, all of whom testified that in their opinion the plaintiff's mental condition was normal.

Mr. J. A. Bass, Clerk of the Superior Court of Person County, testified that the commitment papers were in the possession of Mrs. Woody from 14 November, 1949, until she brought them into his office on 21 March, 1950; that he did not know what physicians, if any, examined the plaintiff until he saw their signatures on the commitment papers; that the papers appeared to be in proper order and he signed the order of commitment and that Mrs. Woody picked the papers up and walked out and when she got to the door she turned to the Clerk and said, "If it weren't for my pull at Duke, I would have never gotten this through," and left. This statement was admitted against Mrs. Woody only.

The Clerk further testified that he was related to plaintiff and had known her all his life; that Mrs. Woody had talked to him on several occasions as to the advisability or propriety of her committing plaintiff to some institution for observation and that "he told Mrs. Woody that he thought or in his opinion it would be the kindest thing she could do for her sister"; that some time thereafter Mrs. Woody signed an affidavit to procure admission of plaintiff but suggested delaying the commitment until after Christmas so plaintiff would not be in the hospital at that time; that on 21 March, 1950, he entered an order for the commitment of plaintiff to the State Hospital for observation for a period not exceeding thirty days; that upon the affidavits of Drs. Hohman and Gentry and the witness' own knowledge of plaintiff he stated to Dr. Pleasants (Superintendent of the State Hospital) that in his opinion she was a fit subject for his institution; that he had suggested the observation of plaintiff at Duke Hospital and Mrs. Woody had urged him to have this done; that he had formed an opinion for more than a year prior to November, 1949, that plaintiff was a fit subject to be restrained in the State Hospital and had held that opinion for a year or maybe two years and that he considered his opinion was based upon valid information. "That the things about her that led him to the opinion before she was taken to the insane asylum, that she was a fit subject for the insane asylum, was that Miss Maude would talk you to death and worry you to death . . . . And that she thought Mrs. Woody was persecuting her . . . ." The Clerk also testified that upon the request of the Superintendent of the State Hospital he issued a second order for plaintiff to remain in the said hospital for observation thirty days in addition to the thirty days theretofore ordered and that plaintiff was retained for seventeen additional days beyond this thirty-day extension.

Dr. Hohman, one of the defendants, was called by plaintiff as an adverse witness and testified, among other things, that Mrs. Woody told him that she thought her sister was mentally sick and inquired whether the witness thought it would be wise to have her admitted for observation to Duke Hospital for a period of one or two weeks, expressing her willingness to pay for the care as a private patient if the witness thought it wise; the witness testified that he replied to Mrs. Woody "that there was a long waiting list at Duke Hospital and this case seemed to be of such long-standing chronicity that he did not think a short period of observation at Duke Hospital would be serviceable." That after the witness advised Mrs. Woody not to bring the plaintiff to Duke, Mrs. Woody stated to the witness that she desired to have plaintiff committed to the State Hospital; that she informed the witness that the plaintiff thought that she, Mrs. Woody, had mistreated her; that the plaintiff had made threats that she would injure herself, these statements having been made over the course of several years. That the plaintiff had been spying on the nephew (son of Mrs. Woody); that the neighbors and relations were fearful that she might harm the nephew; that her niece who lived in the homeplace with plaintiff was scared to death of her, and on one occasion a piece of cake was found between the front door and screen of the Woody home and Mrs. Woody told her son not to eat it and the next day the plaintiff was found peering into the window; that Dr. Gentry told the witness that Miss Barnette had wandered away from home trying to get medical attention for a crooked back and heart disease; that Mrs. Woody also informed the witness that the plaintiff has turned successively against those most kind to her, and specifically enumerated to the witness who those people were. That the witness was requested by Mrs. Woody to examine plaintiff with reference to her mental condition; that he did examine the facts in the case. The evidence further tends to show that the plaintiff applied for a permit to carry a pistol in 1949.

At the close of plaintiff's evidence the court entered judgments of nonsuit as to each of the defendants and the plaintiff appeals assigning error.

*John F. Matthews, Charles P. Green and Davis & Davis, attorneys for plaintiff appellant.*

*Reade, Fuller, Newsom & Graham, and R. B. Dawes and E. C. Bryson, attorneys for appellee Annie Laurie Woody.*

*Reade, Fuller, Newsom & Graham, and F. L. Fuller, Jr., attorneys for appellee Dr. Leslie B. Hohman.*

*Spears & Spears and R. P. Burns, attorneys for appellee Dr. G. W. Gentry.*

DENNY, J.  The appellant groups her twenty-four assignments of error based on a similar number of purported exceptions, but an examination of the record discloses that a large percentage of these purported exceptions appear nowhere in the record except under the assignments of error, and not a single one of the remaining exceptions is set out in the case on appeal and numbered, as required by Rule 21, Rules of Practice in the Supreme Court, 221 N.C. 558.  Moreover, in many instances, the words "exception by plaintiff," which appear in the context of the case on appeal, and apparently being the exception upon which the appellant intended to rely in grouping her assignments of error, do not appear on the page indicated thereunder.  Hence, it would require a tedious and time-consuming voyage of discovery for us to ascertain upon what the appellant is relying to show error, and our Rules and decisions do not require us to make any such voyage.  *In re Will of Beard*, 202 N.C. 661, 163 S.E. 748; *Cecil v. Lumber Co.*, 197 N.C. 81, 147 S.E. 735.

This Court has universally held that an assignment of error not supported by an exception is ineffectual.  *Rigsbee v. Perkins, post,* 502; *S. v. Howell*, 239 N.C. 78, 79 S.E. 2d 235; *S. v. Moore*, 222 N.C. 356, 23 S.E. 2d 31; *Smith v. Supply Co.*, 214 N.C. 406, 199 S.E. 392; *Rogers v. Jones*, 172 N.C. 156, 90 S.E. 117; *Thompson v. R. R.*, 147 N.C. 412, 61 S.E. 286.  Moreover, the provisions of G.S. 1-206, as amended by Chapter 150, Session Laws of 1949, and by Chapter 57, Session Laws of 1953, *do not eliminate the necessity for setting out and numbering the exceptions relied upon in the statement of the case on appeal.*  Rule 21, *supra.*  But, in the absence of any exceptions, or where they have not been preserved in accord with the requirements of our Rules, the appeal will be taken as an exception to the judgment. *S. v. Sloan*, 238 N.C. 672, 78 S.E. 2d 738; *Gibson v. Insurance Co.*, 232 N.C. 712, 62 S.E. 2d 320; *Dixon v. Osborne*, 201 N.C. 489, 160 S.E. 579.  Therefore, the only question presented on this appeal is whether or not the court below committed error in sustaining the defendants' motions for judgment as of nonsuit.

An examination of the plaintiff's complaint leaves one in doubt as to whether she is seeking to recover on an action for malicious prosecution, abuse of process, or for false imprisonment.  Likewise, judging from the brief filed in her behalf, her counsel seem doubtful as to what cause of action they are relying upon.  In fact, they say in their brief "that the plaintiff's evidence has made out a case of actionable tort against the defendants and each of them and that it is immaterial whether the label of malicious prosecution or abuse of process or omission of duty be affixed to the case."

This action was begun two years, eleven months and twenty-one days after the plaintiff was discharged from the State Hospital, after having been under observation at that institution for seventy-six days and held not to show any evidence of a mental disorder. Hence, the three-year statute of limitations pleaded by the defendants, G.S. 1-52, would not be a bar to an action for malicious prosecution or abuse of process. However, it would seem that the plea of the one year statute of limitations, G.S. 1-54, would be a bar to an action for false imprisonment. *Jackson v. Parks,* 216 N.C. 329, 4 S.E. 2d 873.

Abuse of process consists in the malicious misuse or perversion of a civil or criminal writ to accomplish some purpose not warranted or commanded by the writ. *Ellis v. Wellons,* 224 N.C. 269, 29 S.E. 2d 884; *Melton v. Rickman,* 225 N.C. 700, 36 S.E. 2d 276, 162 A.L.R. 793; *McCartney v. Appalachian Hall,* 230 N.C. 60, 51 S.E. 2d 886.

The distinction between an action for malicious prosecution and one for abuse of process is that malicious prosecution is based upon malice in causing the process to issue, while abuse of process lies for its improper use after it has been issued. In an action for malicious prosecution the plaintiff must prove malice, want of probable cause and termination of the prosecution or proceeding in plaintiff's favor. *Abernethy v. Burns,* 210 N.C. 636, 188 S.E. 97; *Carson v. Doggett,* 231 N.C. 629, 58 S.E. 2d 609. However, the only essential elements of abuse of process are: First, the existence of an ulterior purpose and, second, an act in the use of the process not proper in the regular prosecution of the proceeding. *Ledford v. Smith,* 212 N.C. 447, 193 S.E. 722; *Carpenter v. Hanes,* 167 N.C. 551, 83 S.E. 577.

In the instant case, however, the plaintiff's evidence clearly establishes the fact that the process which she alleges was maliciously sued out was used for the purpose for which it was intended and the result accomplished was warranted and commanded by the writ. This was not the case in either *Davenport v. Lynch,* 51 N.C. 545 or *Getsinger v. Corbell,* 188 N.C. 553, 125 S.E. 180, cited and relied upon by the plaintiff. Hence, in our opinion, the evidence adduced in the trial below is insufficient to support an action for abuse of process.

On the other hand, conceding, but not deciding, that the complaint alleges a good cause of action for malicious prosecution and is not demurrable on the ground of a misjoinder of causes of action, we have concluded that the plaintiff's evidence is insufficient to establish a conspiracy on the part of the defendants or to establish malice on their part or any one of them.

The task of passing upon the motions for judgment as of nonsuit has been somewhat complicated because counsel for appellant have quoted, in their brief, about as freely from the excluded evidence as they have

from the evidence admitted in the trial below. They cite as authority for their right to do so, *Whitmire v. Heath,* 155 N.C. 304, 71 S.E. 313. It will be noted, however, that the evidence excluded in the last cited case should have been admitted and proper exception was preserved to its exclusion. Such is not the case on the record before us. Consequently, we have not considered the excluded evidence in passing upon these motions.

In view of the conclusions we have reached, we deem it unnecessary to discuss or consider the question of privilege, *Jarman v. Offutt,* 239 N.C. 468, 80 S.E. 2d 248, or to determine whether or not the order of the Clerk, adjudging the plaintiff a fit subject for observation in the State Hospital, was a termination of the proceeding in favor of the defendants and, therefore, *res judicata.*

The separate judgments of nonsuit entered as to each defendant in the court below will be upheld.

Affirmed.