## MARY P. FOWLE v. DR. WILLIS H. FOWLE, III.

(Filed 24 February, 1965.)

**1. Malicious Prosecution § 1; False Imprisonment § 1; Process § 16—**

Allegations to the effect that defendant instituted proceedings for the commitment of plaintiff to a mental hospital, maliciously for the purpose of ridding himself of plaintiff, his wife, when defendant well knew that plaintiff was not mentally disordered, that plaintiff was committed pursuant to the writ and later discharged as sane, does not state a cause of action for false imprisonment, since plaintiff was committed pursuant to a duly issued order, nor for abuse of process, since the result accomplished was warranted by the writ, but the allegations state a cause of action for malicious prosecution.

**2. Malicious Prosecution § 2—**

Proceedings under the statute for the commitment of a person to a mental hospital are judicial in nature, and the institution of such proceedings maliciously and without probable cause will support an action for malicious prosecution. G.S. 122-46.

**3. Malicious Prosecution § 6—**

Where a person committed to a mental hospital is discharged on a writ of *habeas corpus* less than a month thereafter upon findings by the court that such person was improperly restrained of her liberty and was not psychotic, and there is no evidence of any material change in her mental condition between said dates, there is a sufficient termination of the judicial proceedings for the purpose of an action for malicious prosecution.

**4. Malicious Prosecution § 4—**

In an action for malicious prosecution plaintiff must show, in addition to malice, want of probable cause, which is not established merely by proof of the termination of the judicial proceeding in plaintiff's favor, but must be established by showing that a reasonable man would not have believed and acted under the circumstances as defendant did.

**5. Malicious Prosecution § 11—**

Evidence tending to show that defendant had his wife committed to a mental hospital, that about a month later she was discharged upon *habeas corpus* on the court's finding that she was improperly restrained of her liberty and was not psychotic, with testimony of psychiatrists that she did not need treatment for any mental disease at the time she was committed, together with testimony of the wife that they had had marital difficulties over a period of years, that he had repeatedly threatened to have her committed, and that he remarried the day after a divorce decree was entered, is *held* sufficient to be submitted to the jury on the element of want of probable cause.

Parker and Bobbitt, JJ., dissent.

APPEAL by plaintiff from *Crissman, J.,* 5 April 1964 Session of RANDOLPH. This case was docketed in the Supreme Court as No. 524 and argued at the Fall Term 1964.

This is a civil action instituted by plaintiff on 23 January 1961, to recover damages against the defendant for allegedly having her unlawfully committed to a state hospital for mentally disordered persons.

Plaintiff and defendant were married at Chapel Hill, North Carolina, in 1948, while the defendant was a student at the University of North Carolina Medical School. After completing his medical education and his internship, the defendant and plaintiff moved to Asheboro, North Carolina, in 1954, where the defendant has been engaged in the practice of medicine since that time.

The plaintiff alleges in her complaint, among other things, the following:

That on 28 January 1960, the defendant, her husband, maliciously and wrongfully instituted insanity proceedings against the plaintiff for her commitment to a state hospital for the mentally disordered, by executing and filing an affidavit with the Clerk of the Superior Court of Randolph County to the effect that, in his opinion, the plaintiff was suffering from some mental disorder and was a fit subject for admission into a hospital for the mentally disordered.

That the defendant well knew that the plaintiff was not insane, was not mentally disordered, was not in need of mental treatment, and was not a fit subject for admission into a hospital for the mentally disordered.

That the defendant acted solely through ill will and malice growing out of the marriage relationship between the plaintiff and himself and through his desire to rid himself of the plaintiff.

That the Clerk of the Superior Court of Randolph County ordered an examination of the plaintiff and that thereafter a hearing was held with respect to the commitment of plaintiff. That plaintiff was committed to Umstead State Hospital on 28 January 1960 and remained there for 24 days, until she was released pursuant to an order of the Honorable Hamilton H. Hobgood, entered in a *habeas corpus* proceeding, inquiring into plaintiff's detention. That plaintiff suffered serious damage by virtue of her wrongful detention.

Plaintiff's evidence tends to show these facts:

The plaintiff started receiving psychiatric treatments in May 1957, at which time she was confined to Duke Hospital for about one month. She thereafter received out-patient treatments from two psychiatrists for a period of approximately one year, going for out-patient treatment approximately three times per week and receiving ninety some treatments over a period of one year. She received treatment on

an out-patient basis up to and including 30 January 1959. On 28 January 1960, the defendant filed with the Clerk of the Superior Court of Randolph County an affidavit stating that the plaintiff was, in his opinion, a fit subject for admission into a hospital for the mentally disordered. Affidavits were filed by Dr. E. D. Shackelford and Dr. T. R. Cleek, stating that they had carefully examined the plaintiff and that in the opinion of each of them Mary Elizabeth Fowle (plaintiff) was suffering from a mental disease and was a fit subject for admission into a hospital for the mentally disordered. These affidavits were filed pursuant to an order of the Clerk of the Superior Court of Randolph. County and pursuant to the provisions of North Carolina General Statutes, Chapter 122, Article 3.

According to the record, the Clerk of the Superior Court of Randolph County held a hearing in the matter. Other than the Clerk and the plaintiff, those present at the hearing which was held in the home of the plaintiff, were Richard Clark, an attorney whom the plaintiff had called, Dr. Shackelford, Dr. Cleek, and a Deputy Sheriff. The plaintiff expressed a willingness to go to Duke Medical Center for psychiatric treatment but protested being committed to Umstead State Hospital for treatment.

Plaintiff's evidence tends to show that during several years prior to 28 January 1960, the plaintiff and the defendant had serious marital difficulties; that the defendant would get mad and threaten about twice a month to have her committed to Butner (Umstead State Hospital); that he assaulted her many times, and in one of his tantrums he broke her arm; that the day after she was discharged from Umstead State Hospital the defendant filed an action for divorce and has since been granted a divorce; that he married a second spouse the day after his divorce was granted.

After alleging in her complaint that a hearing was held before the Clerk of the Superior Court of Randolph County, the plaintiff testified that no hearing was held before said Clerk and denied that Drs. Shackelford and Cleek had examined her as stated in their affidavits. The plaintiff also testified that her husband thought she used alcohol to excess. According to plaintiff's evidence, the plaintiff and the defendant were social drinkers.

The plaintiff offered in evidence the affidavit of the defendant as well as those of Drs. Shackleford and Cleek, tending to show the need for the plaintiff to be committed to a hospital for the mentally disordered, and the order of the Clerk of the Superior Court of Randolph County committing the plaintiff to Umstead State Hospital for "a period of observation, not exceeding sixty days."

Plaintiff further offered evidence of several psychiatrists tending to show that she was not in need of treatment for any mental disease at the time she was committed to Umstead State Hospital; that she had anxiety neurosis. One of the psychiatrists testified that he recommended that Mrs. Fowle would benefit from psychiatric out-patient treatment.

At the close of plaintiff's evidence, on motion of the defendant, the court below entered a judgment as of nonsuit.

The plaintiff appeals, assigning error.

*Ottway Burton for plaintiff appellant.*
*L. T. Hammond, Sr., L. T. Hammond, Jr., Ferree, Anderson & Ogburn for defendant appellee.*

DENNY, C.J.  This action was originally brought against Dr. Willis H. Fowle, III, Dr. E. D. Shackelford and Dr. T. R. Cleek, to recover damages for the detention of plaintiff in a state hospital for mentally disordered persons, arising out of a judicial proceeding under Article 3, Chapter 122, General Statutes of North Carolina. A joint written demurrer filed by defendants Drs. Shackelford and Cleek was sustained and the plaintiff appealed. This Court, at the Fall Term 1961, in an opinion reported in 255 N.C. 720, 122 S.E. 2d 722, sustained the demurrer on authority of *Bailey v. McGill,* 247 N.C. 286, 100 S.E. 2d 860 and *Jarman v. Offutt,* 239 N.C. 468, 80 S.E. 2d 248.

An examination of the complaint herein leaves one in doubt as to whether the plaintiff is seeking recovery of an action for false imprisonment, malicious prosecution, or abuse of process.

In the case of *Melton v. Rickman,* 225 N.C. 700, 36 S.E. 2d 276, 162 A.L.R. 793, this Court said: "At common law there were a number of related causes of action devised to afford a remedy against the wrongful invasion of the liberty of an individual through the processes of the courts.

"A cause of action for false arrest or false imprisonment is based upon the deprivation of one's liberty *without* legal process. It may arise when the arrest or detention is without warrant * * *.

"To sustain an action for malicious prosecution the plaintiff must show malice, *want of probable cause,* and the favorable termination of the former proceeding.

"One who uses *legal process* to compel a person to do some collateral act not within the scope of the process or for the purpose of oppression or annoyance is liable in damages in a common law action for abuse of process.

"So then, while false imprisonment is the arrest and imprisonment without legal process and malicious prosecution is the prosecution with

malice and without probable cause, abuse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is attended to be secured." (Citations omitted. Emphasis added, with the exception of that in last paragraph.)

There is no evidence of false imprisonment. The plaintiff was committed pursuant to a duly issued order of the Clerk of the Superior Court of Randolph County as authorized by statute. Moreover, the plaintiff's evidence clearly establishes the fact that the proceeding which she alleges was maliciously instituted, was used only for the purpose for which it was intended, and the result accomplished was warranted and commanded by the writ. Therefore, the evidence is insufficient to support an action based on abuse of process. *Ledford v. Smith,* 212 N.C. 447, 193 S.E. 722; *Carpenter v. Hanes,* 167 N.C. 551, 83 S.E. 577; *Hauser v. Bartow,* 273 N.Y. 370, 7 N.E. 2d 268.

Consequently, in our opinion, the complaint only states a cause of action for malicious prosecution. *Barnette v. Woody,* 242 N.C. 424, 88 S.E. 2d 223, and cited cases.

Article 3, Chapter 1232 of the 1957 Session Laws of North Carolina, codified as G.S. 122-35.1 through G.S. 122-65, was in effect until 1 July 1963, the effective date of Chapter 1184 of the 1963 Session Laws of North Carolina. Therefore, the law in effect on 28 January 1960 is applicable in this case.

G.S. 122-46 was in effect on 28 January 1960 and, among other things, provided: "Neither the institution of a proceeding to have any alleged mentally disordered person committed for observation as provided in this section nor the order of commitment by the clerk as provided in this section shall have the effect of creating any presumption that such person is legally incompetent for any purpose. Provided, however, that if a guardian or trustee has been appointed for any alleged mentally disordered person under G.S. 35-2 or 35-3 the procedure for restoration to sanity shall be as is now provided in G.S. 35-4 and 35-4.1."

In view of the fact that neither the institution of the proceeding complained of, nor the order of the clerk entered therein, "shall have the effect of creating any presumption that such person is legally incompetent for any purpose"; and the further fact that the plaintiff is entitled upon a motion for nonsuit to have her evidence considered in the light most favorable to her, we hold that the evidence is sufficient to carry the case to the jury on the questions of malice, lack of probable cause, and favorable termination of the commitment proceeding.

It is stated in 34 Am. Jur., Malicious Prosecution, § 7, page 706, as follows: "One of the elements necessary to authorize an action for malicious prosecution is the commencement and prosecution of a judicial proceeding against the plaintiff." *Ibid.,* § 33, page 723, it is said: "If, upon a discharge of a writ of *habeas corpus,* the proceeding against the accused can go no further, there is a sufficient termination to sustain an action for malicious prosecution."

We have heretofore held that a proceeding pursuant to G.S. 122-46 is a judicial proceeding. *Bailey v. McGill, supra,* and *Jarman v. Offutt, supra.*

There was evidence in the trial below tending to show that the plaintiff on 28 January 1960 was not psychotic nor in need of observation in an institution for the observation and treatment of the mentally disordered. Furthermore there was no evidence in the trial below tending to show that the mental condition of the plaintiff was any different on 28 January 1960 than it was on 22 February 1960, the date of her discharge upon a writ of *habeas corpus,* in which hearing the court found as a fact that the plaintiff was not psychotic, that she was being improperly restrained of her liberty, and thereupon ordered her release.

In an action for malicious prosecution the plaintiff must not only prove malice but the want of probable cause and termination of prosecution or proceeding in plaintiff's favor. *Barnette v. Woody, supra.* Malice alone is not sufficient to support an action for malicious prosecution. Moreover, in an action for malicious prosecution, the acquittal of defendant by a court of competent jurisdiction does not make out a *prima facie* case of want of probable cause. *Morgan v. Stewart,* 144 N.C. 424, 57 S.E. 149; *Bell v. Pearcy,* 33 N.C. 233.

In 34 Am. Jur., Malicious Prosecution, § 47, page 732, it is said: "* * * A definition sufficiently exact to meet satisfactorily every possible test would be difficult, if not impossible, to furnish, for the complete legal idea expressed by the term 'probable cause' is not to be gathered from a mere definition. However, * * * the standard of conduct for beginning or continuing any proceeding, whether civil or criminal, is that of a reasonable or ordinarily prudent man placed in the same situation as the defendant. That is, if a reasonable man would have believed and acted under the circumstances as the defendant did, there would be probable cause; otherwise not. It is to be noted that the conduct of the defendant is to be weighed in view of what appeared to him at the time of instituting the prior proceeding, not in the light of subsequently appearing facts."

Upon this record, in our opinion the judgment of nonsuit entered below should be
Reversed.

PARKER AND BOBBITT, JJ., dissent.