INEZ BEASLEY v. MALAH McLAMB, EXECUTOR OF THE ESTATE OF OSCAR McLAMB.

(Filed 20 November, 1957)

1. **Appeal and Error § 38—**

    Assignments of error not discussed in the brief are deemed abandoned. Rule of Practice in th Supreme Court No. 28.

2. **Husband and Wife § 6—**

    Earnings of a married woman by virtue of a contract for her personal services are her sole and separate property, and she may sue to recover under such contract alone. G.S. 52-10.

3. **Executors and Administrators § 15d—Evidence held sufficient for jury in this action to recover for personal services rendered under contract.**

    Allegations and evidence to the effect that testate asked his niece and her husband to live with him so that she could look after him, that testate promised that he would see that they were well paid for such services, that in reliance thereon the niece performed menial services, often of an onerous nature, for testate for a period of over a year, that testate repeatedly stated to others that he wished her to be well paid, that thereafter testate offered to give his niece and her husband a deed to testate's farm if they would stay with him and look

BEASLEY *v.* McLAMB.

after him until his death, that they stated they would accept the offer unless it stirred up controversy among his relatives, in which event they would deed the farm back and leave, that testate executed the deed and upon controversy the niece and her husband reconveyed the property and left testate's home, *held* sufficient to overrule nonsuit in the niece's action to recover the value of the services rendered, and further, the charge of the court in this action was without error.

4. Same—

When one person performs personal services for another in expectation of payment and in reliance upon such other's promise to pay, the person performing the services may recover the reasonable value of such services under the contract, and the express promise to pay will overcome any implication that the services were intended to be gratuitous, even when the person rendering the services is kin to the promisor.

5. Appeal and Error § 19—

An assignment of error to the issues submitted, which assignment of error is not supported by an exception or the tender of other issues, will be disregarded by the Supreme Court on appeal *ex mero motu.*

6. Appeal and Error § 42—

Where the court's statement of a contention is fully supported by the evidence and appellant makes no objection thereto prior to the retirement of the jury, an assignment of error to the statement of the contention cannot be sustained.

7. Trial § 39—Record held not to show that jury disregarded court's instruction in determining amount of recovery.

Plaintiff sued to recover the reasonable value of personal services for a stipulated number of days and alleged that such services were reasonably worth a specified amount. The court charged that plaintiff could not recover for the full number of days stipulated and that the jury should not consider any services rendered after a specified date. The jury allowed recovery for the full amount sought. *Held:* Exception to the refusal of the court to set aside the verdict on the ground that the jury obviously disregarded the court's instructions will not be sustained when it is apparent from the record that in view of the menial and onerous character of the services, the recovery was not excessive for that period for which plaintiff clearly established the right to recover.

APPEAL by defendant from *Seawell, J.,* April Term 1957 of JOHNSTON.

Civil action to recover for services rendered by plaintiff to Oscar McLamb from 18 December 1953 to 12 March 1955 (Oscar McLamb died 12 September 1955), it being alleged in the complaint that Oscar McLamb told plaintiff and her husband that he was unable to wait upon himself and needed someone to wait upon him, that he wanted them to move into his home and wait upon him, and that he would pay them well if they accepted his proposition; and it is further alleged in the complaint that Oscar McLamb knowingly and voluntarily

accepted services rendered by plaintiff, and received such services in expectation of paying the reasonable value thereof.

Upon the denial of liability by defendant and issues joined, the jury returned the following verdict:

"1. Did the plaintiff render services to Oscar McLamb under a contract, as alleged in the Complaint? Answer: YES.

"2. What amount is plaintiff entitled to recover of the defendant as the fair and reasonable value of the services so rendered? Answer: $2500.00."

Judgment was entered on the verdict for the plaintiff, from which defendant appeals.

*Duncan C. Wilson, Levinson & Levinson for plaintiff, appellee.
J. R. Barefoot and E. A. Parker for defendant, appellant.*

PARKER, J. Defendant's two assignments of error as to the admission of evidence are taken as abandoned for the reason that they are neither mentioned nor referred to in his brief. Rule 28, Rules of Practice in the Supreme Court, 221 N.C. 563; *Waddell v. Carson*, 245 N.C. 669, 97 S.E. 2d 222.

The defendant offered no evidence. He assigns as error the denial of his motion for judgment of nonsuit made at the close of plaintiff's evidence.

Plaintiff's evidence shows these facts: Oscar McLamb's wife died in October 1953 leaving him alone in his home on his 29-acre farm. At that time plaintiff and her husband and their children were living in a rented house about three miles from Oscar McLamb, plaintiff's uncle. Plaintiff was regularly employed at a shirt factory at a wage of $33.00 a week, and her husband was employed at a veneer plant at a wage of $32.00 a week. Two or three weeks after his wife's death Oscar McLamb went to plaintiff's home, and said to them, according to plaintiff's husband, that he was left alone, and wanted someone to stay in his home, look after him, cook for him, and attend to him, and that, if they would come and do that, that "after twelve months he would see that we were paid and satisfied well for staying there with him." Plaintiff and her husband did not at that time accept his offer. A little later Oscar McLamb returned to their home, ate dinner with them, repeated his offer, and said they could wait a few days, and think it over. Later, he came back, and plaintiff and her husband agreed to move to his house, and "he agreed that we would be satisfied and sufficiently paid after we had stayed twelve months."

Plaintiff and her husband moved into Oscar McLamb's house on 18 December 1953. At that time Oscar McLamb had heart trouble, and was under a doctor's care. He was on a diet, could not eat salty food, and his meals had to be prepared separately. Plaintiff cooked, washed, waited on, and cared for Oscar Mc-Lamb. In April 1954 a mule kicked Oscar McLamb on the leg, causing an abscess on the bone. As a result of this injury and his physical condition he got in such bad shape, plaintiff quit her job in the factory on 4 July 1954 to wait on him. He had no "control of his person," he would sit in a chair, and mess his clothes up, and plaintiff had to wash and change his clothes and bathe him. She had to change his bed linen, and dry his bed as much as three times a night. He had no control over his bowels until he went to a hospital in November 1954. On another occasion Oscar McLamb suffered an injury in a car wreck that disabled him for two or three weeks, and plaintiff waited on him day and night. Plaintiff rendered such services until March 1955, when she and her husband moved away from Oscar McLamb's home for reasons which will be stated later.

Brastus Barefoot testified that he visited Oscar McLamb's home at least once a week, and saw plaintiff washing, cooking and waiting on Oscar McLamb. That he did not know what their agreement was, but that Oscar McLamb told him "they (plaintiff and her husband) were good to him and he wanted them paid for looking after him." He further testified: "He (Oscar McLamb) was sick a lot, and had to have attention, and he told me that nobody could be any better to him than they were, and that he wanted them to have pay for it."

Oscar McLamb was a member of Rev. Chester Davis' church. Rev. Chester Davis visited his home regularly. After plaintiff quit work at the shirt factory, he saw her there all the time cooking, washing, giving Oscar McLamb medicine, and moving him around. He testified Oscar McLamb told him, "I just hate to have that little lady have to wait on me like she does, but I can't help it, I just got to have somebody to help me." He further testified: "He (Oscar McLamb) didn't tell me how much they were to get. He did say that he wanted them to have their pay. He made that statement several times."

After Christmas 1954 Oscar McLamb offered to give plaintiff and her husband a deed for his farm if they would stay with him and look after him until his death. They told him that they would accept his offer, "unless it stirred up confusion among his people, and that if it did, we would give it back to him and leave, which we did." On 14 January 1955, he conveyed by deed his farm to them, reserving to himself a life estate. At that

time the farm was worth $10,000.00 to $12,000.00. Oscar Mc-Lamb at that time also made a will bequeathing plaintiff and her husband his personal property, which he later destroyed. Because of the fussing of Oscar McLamb's brothers and sisters and the confusion with them over the deed, plaintiff and her husband conveyed the farm back to Oscar McLamb on 10 March 1955, and left his home. After they moved out, Carlyle McLamb, a brother of the defendant, moved in, lived with Oscar McLamb about four months before his death, and Oscar McLamb conveyed his farm to him.

Plaintiff testified: "I have never been paid anything by him (Oscar McLamb) or his executor for services rendered, and I filed a claim with his executor, which was rejected."

G.S. 52-10 provides "the earnings of a married woman by virtue of any contract for her personal service, . . . can be recovered by her suing alone, and such earnings or recovery shall be her sole and separate property as fully as if she had remained unmarried."

"It is undeniable that an express contract to pay for services may be made with a member of the family as well as with any other person. Proof of a specific agreement to remunerate for given services will overcome any implication that they were intended to be gratuitous. . . . The clearest and most definite proof of the existence of an agreement is, of course, that which is supplied by direct evidence that the services were performed in reliance on an explicit, formal promise by their recipient that remuneration would be given. The fact that a claimant who can establish such a promise is entitled to recover cannot be and has never been disputed." 58 Am. Jur., Work and Labor, Sec. 13.

This is said in 34 C.J.S., Executors and Administrators, Sec. 370: ". . . a claim for services rendered to decedent may be allowed against his estate where the services have not been paid for and they were rendered under, and in conformity with, an agreement or contract that they would be paid for. . . ."

"Where an express contract for services . . . does not specify the amount of the compensation, a promise to pay the reasonable value of the services . . . is implied, and the person performing the services . . . is entitled to recover on a *quantum meruit* for their worth. The fact that a contract to pay one well for services does not fix a definite amount of compensation does not prevent an action for the reasonable value of such services from being an action on contract rather than on *quantum meruit*." 58 Am. Jur., Work and Labor, Sec. 39.

There is ample evidence to show the contract as alleged, and that plaintiff in reliance on Oscar McLamb's explicit promise and agreement that he would pay sufficient remuneration, ren-

dered valuable services—some of an onerous and menial character—to him from 18 December 1953 to 14 January 1955. The evidence also clearly shows that this contract was terminated on 14 January 1955, and that on that day plaintiff and her husband and Oscar McLamb entered into a new contract as set forth above in the statement of the evidence. The court properly overruled the motion for judgment of nonsuit.

No exception was taken by the defendant to the form of the issues submitted by the judge to the jury. The defendant tendered no other issues. The issues submitted were proper. Defendant's assignments of error Nos. 6 and 7 to the submission of the issues have no exceptions to support them, and will be disregarded. The rule is mandatory, and will be enforced *ex mero motu. Suits v. Ins. Co.*, 241 N.C. 483, 85 S.E. 2d 602; *Barnette v. Woody*, 242 N.C. 424, 88 S.E. 2d 223.

Defendant's assignment of error No. 12 relates to a part of the charge in which the Court stated a contention of the plaintiff. The contention was fully supported by the evidence. Defendant did not say anything about the statement of the contention before the jury retired. This assignment of error is without merit.

Defendant's assignment of error No. 8 is to this part of the charge:

"If you answer the first issue YES and come to consider the second issue, your answer to the second issue should be in such amount, if any, as you may find from the evidence, by its greater weight, will fairly compensate her for services rendered during the period from the 18th of December, 1953, to January 14, 1955. The Court will not let you consider for the purposes of this case, any services rendered after the 14th day of January, 1955, but only such services as plaintiff may have satisfied you from the evidence, by its greater weight, might have been rendered from the 18th of December, 1953, to January 14, 1955."

This assignment of error has no merit.

Defendant's assignment of error No. 19 is "to the refusal of the Court to set aside the verdict and have a new trial." Defendant contends that the verdict was excessive and contrary to law, in that plaintiff in her complaint sued for $2,500.00 for services for 449 days, and that the Court erred in its refusal to set aside the verdict for $2,500.00, although the jury was instructed to consider no services for the period from 14 January 1955 to 10 March 1955. Defendant cites to support his contention authority to the effect that a plaintiff cannot recover an amount greater than he sues for, and a statement from Am. Jur. that a verdict should be set aside, when it is clear that the jury disregarded the evidence or the rules of law.

Plaintiff alleged in her complaint that under the contract she rendered services to Oscar McLamb from 18 December 1953 to 12 March 1955, a period of 449 days, and that $2,500 was the reasonable value of such services. It is true that the Court in its charge limited the recovery to the period from 18 December 1953 to 14 January 1955, a period less than 449 days, but the jury did not answer the second issue in an amount larger than the plaintiff sued for. It seems clear by its verdict, considered in connection with the charge of the court, that the jury was satisfied by the greater weight of the evidence that plaintiff was entitled to recover $2,500.00 as the fair and reasonable value of the services she rendered to Oscar McLamb by contract from 18 December 1953 to 14 January 1955. Considering the faithful and menial services plaintiff rendered Oscar McLamb during that period, his statement that nobody could be any better to him than they were, and his repeated statements to the Rev. Chester Davis that he wanted them to have their pay, it cannot be said that the verdict for $2,500.00 is excessive. This assignment of error is overruled.

All of the other assignments of error of the defendant are deemed abandoned, as they are not set out in his brief. Rule 28, Rules of Practice in the Supreme Court, 221 N.C. 563.

Defendant has not shown any sufficient reason to disturb the verdict and judgment.

No error.