FARMERS COOPERATIVE EXCHANGE, INCORPORATED v.
RAYMOND A. SCOTT, DORIS C. SCOTT AND SCOTT POULTRY COMPANY.

(Filed 19 July 1963.)

1. **Appeal and Error § 19;   Reference § 4—**

When appellants have objected to an order of compulsory reference but have no exception to the order except in their assignments of error, their contention that it was error to order a compulsory reference prior to the determination of their plea in bar, is not properly presented, it being required that an assignment of error be supported by an exception duly noted in the record.

2. **Reference § 4—**

Where appellants have objected to an order of compulsory reference but do not enter an exception on the ground that the court could not order the reference prior to the determination of their plea in bar until the trial by jury in the Superior Court upon the referee's report, the exception is not to the order of compulsory reference when made and is ineffectual.

3. **Reference § 3—**

Where an action involves purchases on account over a period of years it cannot be said that the action does not require the examination of a long account within the meaning of the reference statute. G.S. 1-189.

4. **Appeal and Error § 41—**

Where the evidence excluded does not appear in the record, it cannot be determined on appeal that its exclusion was prejudicial.

5. **Appeal and Error § 1—**

Where, in an action on an account, there is no allegation or contention that the prices charged by plaintiff were excessive, the contention on appeal that certain evidence excluded was competent on the question of price cannot be sustained, since the appeal must follow the theory of the trial.

6. **Evidence § 35—**

The exclusion of a witness's estimate in regard to a matter, without any facts in evidence upon which the estimate could be based, is properly excluded.

7. **Evidence § 26—**

Parol evidence in regard to writings is properly excluded in the absence of a showing of any effort to procure the writings to offer them in evidence.

8. **Accord and Satisfaction § 1—**

The trial court's charge as to the meaning of "accord and satisfaction" *held* without error.

APPEAL by defendants from *Paul, J.,* August 1962 Term of WAYNE.

Civil action to recover for the sale and delivery of feed and supplies to Raymond A. Scott, doing business under the trade name of Scott Poultry Company, and his wife, Doris C. Scott, under the terms of a special secured feeder account. The action was instituted in Wake County on 21 January 1958, and on 1 June 1959 an order was entered transferring the action for trial to the superior court of Wayne County, the home county of defendants.

This is a summary of the complaint:

During a period commencing prior to August 1956 and ending 4 January 1958 plaintiff sold and delivered to defendants feed and supplies (the complaint is not clear as to whether chicks were included) under the provisions of three speical secured feeder contracts, securing the special secured feeder account. The first such contract was entered into in August 1956, and the payment for any purchases thereunder by defendants was secured by a bond and deed of trust on real and personal property, both dated 2 August 1956, and executed by Raymond A. Scott and wife, Doris C. Scott. On 5 October 1956 and in November 1957 additional such contracts were entered into by the parties, and the payment for any purchases thereunder by defendants was secured by bonds and deeds of trust executed by Raymond A. Scott and wife, Doris C. Scott. During this period of time defendants made many payments to plaintiff for the sale and delivery of feed and supplies to them under the provisions of these contracts, and the unpaid balance on the aforesaid account on 26 November 1957 was $23,491.14; and a written memorandum was signed certifying that on such date the indebtedness of defendants to plaintiff under these contracts was $23,491.14.

Subsequent to 26 November 1957 plaintiff sold and delivered to defendants feed and supplies under the provisions of these contracts in the sum of $5,829.38, a long itemized list of which showing the dates of delivery and the amount thereof is set forth in the complaint. On the purchases and deliveries since 26 November 1957, defendants have made payments in the amount of $3,504.80.

The unpaid balance due from defendants to plaintiff on these contracts is now $25,815.72. Plaintiff prays that it recover $25,815.72, with interest, from defendants, and that claim and delivery issue for the recovery of personal property described in the deeds of trust.

Defendant Doris C. Scott filed a separate answer asserting that she had no connection with or knowledge of the matters alleged in the complaint, except that she admitted that she, at the request of her husband, signed the three bonds and deeds of trust set forth in the com-

plaint, securing an indebtedness alleged in the complaint as owed by her husband to plaintiff. As a further answer and bar to recovery, she denies that she is indebted to plaintiff in any amount, and asserts that under no circumstances is she responsible to plaintiff for the amount of money alleged in the complaint to be owing in excess of that included in the bonds and deeds of trust.

Defendant Raymond A. Scott, doing business as Scott Poultry Company, filed a separate answer. In his answer he admits plaintiff sold to him a considerable amount of merchandise. That his purchases from plaintiff were made with the understanding that he would sell eggs produced by him to Southeastern Hatcheries, Inc., who would pay the purchase price thereof direct to plaintiff, and that plaintiff would give him credits on his account therefor, and regularly render to him statements of the account between them. That plaintiff has never furnished him a statement of the account between them, and he never agreed on 26 November 1957 that he was indebted to plaintiff in the amount of $23,491.14. That he has received a statement from Southeastern Hatcheries, Inc., showing it has paid plaintiff for his benefit more than $58,000, for which plaintiff has given him no credit. He admits he has purchased merchandise from plaintiff subsequent to 26 November 1957, and avers that his records do not show any such payments on these purchases since 26 November 1957 as set forth in the complaint, but do show payments since 26 November 1957 in a considerably larger amount. He admits the execution of the three bonds and three deeds of trust set forth in the complaint, that plaintiff has caused claim and delivery papers to issue, and avers that he has retained possession of the property seized by filing an undertaking in the amount of $40,000.

As a further answer and bar to recovery he alleges in substance: He denies that the correct balance due plaintiff is $23,491.14, and alleges proper credit has not been given him for payments made. His records as of 15 November 1958 show plaintiff has been paid in full, and he is informed and believes, and therefore alleges, that plaintiff's records show the same thing. On 29 October 1958 plaintiff submitted to him a statement showing he owed it $125.76 on these accounts; on 31 October 1958 a charge memorandum in the amount of $432.23 for an insurance premium on insurance covering property described in the deeds of trust was added to this account; and on 11 November 1958 plaintiff rendered to him a statement showing a balance due of $557.99, with an interest charge of $2.79, totaling $560.78. On 15 November 1958 he paid plaintiff the sum of $560.78 by cheque, bearing on its face "Scott Poultry Co. Special Feeder Account in Full,"

which constitutes full payment to plaintiff of all sums due by him, but if the account rendered was not correct, plaintiff knowingly accepted the same in full payment, and thereby entered into an accord and satisfaction agreement. That the cheque was paid when presented. Wherefore, defendant prays that plaintiff's complaint be dismissed or that plaintiff be required to present in court all instruments and papers in respect to all purchases by him and all payments received by it for his benefit, "and the true amount owed by this defendant to the plaintiff be ascertained."

At some term of court, apparently in the fall of 1959, though the term is not specified in the record, an order of reference was entered by Frizzelle, J., presiding, to which order plaintiff and defendants objected, and reserved their rights to a trial by jury. Neither plaintiff nor defendants excepted to the order of reference.

On 10 July 1961 the referee James N. Smith filed his report, in which he made specific detailed findings of fact and conclusions of law, and reported to the court that plaintiff is entitled, *inter alia,* to recover judgment from the defendants Doris C. Scott and Raymond A. Scott in the sum of $25,451.02, with interest from 1 January 1958, subject to a credit of $125.76 for interest paid by defendants on 15 November 1958, and its costs.

Defendants excepted to the referee's findings of fact, tendered issues, and demanded a jury trial.

At the August 1962 Term the case was tried by a jury. The following issues, without objection, were submitted to the jury, and answered as indicated:

"1. Did the defendant, Raymond Scott, on November 26th, 1957, sign and deliver to plaintiff the account stated, the same being marked 'Plaintiff's Exhibit 10', as alleged in the complaint?

"ANSWER: Yes.

"2. At the time the defendants executed and acknowledged the Deed of Trust dated November 22nd, 1957, said instrument being marked 'Plaintiff's Exhibit 9', did said instrument contain the paragraph giving a lien on the equipment and other personal property including chickens with replacement thereof and additions thereto then located on the lands described in said instrument?

"ANSWER: Yes.

"3. In what amount did the defendant, Raymond Scott, make purchases of feed and supplies on his Special Feeder Account from plaintiff on and after November 26th, 1957?

"ANSWER:   $5,517.38.

"4.   In what amount did the defendant, Raymond Scott, make payments to plaintiff on his Special Feeder Account after November 26, 1957?

"ANSWER:   $3,557.50.

"5.   Did the plaintiff accept the check from Raymond A. Scott dated November 15th, 1958, in the amount of $560.78 in accord and satisfaction or as a compromise and settlement of the defendants' Special Feeder Account, as averred in the Answer?

"ANSWER:   No.

"6.   What was the fair market value of the chickens and other personal property seized by the Sheriff under Claim and Delivery and delivered to the defendants on January 27, 1958?

"ANSWER:   $33,779.00."

Judgment was entered upon the verdict. The judgment, after setting forth the issues and the answers thereto, reads:

"And the parties having agreed that 'Plaintiff's Exhibit 10' as referred to in the first Issue, if signed by Raymond Scott, on November 26, 1957, stated an account of $23,491.14 due by him to the plaintiff.

"It further appears to the court that the plaintiff resorted to the remedy of Claim and Delivery and caused the Sheriff to take possession of certain articles of personal property described in the Deed of Trust referred to in the second Issue, and that the defendants replevied said personal property on their undertaking in the amount of $20,000.00, with one Ebern T. Watson as surety on said undertaking.

"It further appears to the court that the parties hereto have stipulated and agreed that all of the personal property seized by the Sheriff under the Claim and Delivery and returned to the defendants on their undertaking has been disposed of or is now of only nominal value.

"The plaintiff, in open court, admits that $125.76 of the amount paid by Raymond A. Scott by the check dated November 15, 1958, was an interest payment for one month on the Special Feeder Account, and that such interest as this judgment may draw should be credited with said amount of $125.76.

"The parties have stipulated that Raymond A. Scott and Doris C. Scott executed the $25,000 Bond payable to plaintiff dated

November 22, 1957, marked 'Plaintiff's Exihibit 8', the same being secured by the Deed of Trust marked 'Plaintiff's Exhibit 9', said Deed of Trust being recorded in the office of the Register of Deeds of Wayne County in Book 477 at page 239.

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED BY THE COURT THAT:

"1.   The plaintiff have and recover of the defendants the sum of $25,451.02, with interest thereon from January 1, 1958, subject to a credit on said interest in the amount of $125.76.

"2.   The plaintiff recover its costs of the defendants, including the cost of the hearings under order of reference in the amount of $150.00.

"3.   The costs of this action be taxed against the defendants, including an allowance of $500.00 to James N. Smith, the Referee hereinbefore appointed in this cause. This is additional to the $250.00 already allowed.

"4.   That the liability of the defendant, Doris C. Scott, under this judgment shall be discharged upon payment of the sum of $25,000.00, plus interest on said $25,000.00 from January 1, 1958, until paid, subject to a credit of $125.76, plus the costs of this action as herein taxed; that the liability of Ebern T. Watson, surety on defendants' replevin bond, shall be discharged upon payment of the sum of $20,000.00, plus interest from January 24, 1958, the date of the defendants' original replevin bond, said interest being subject to a credit of $125.76, plus the costs of this action as herein taxed.

"IT IS FURTHER ORDERED that in the event $25,000.00 with interest thereon from January 1, 1958, subject to said credit of $125.76, is not paid on or before September 30, 1962, William L. Powell, Jr., is hereby appointed commissioner and authorized to advertise and sell the lands described in the Deed of Trust in the Office of the Register of Deeds of Wayne County in Book 477 at Page 239, said advertisement and sale to be in a manner prescribed by statute."

From the judgment, Raymond A. Scott and Doris C. Scott appeal.

*Braswell & Strickland by Roland C. Braswell for defendant appellants.*

*Dees, Dees, and Smith by William L. Powell, Jr., for plaintiff appellee.*

PARKER, J.  Defendants assign as error the order of compulsory reference. Defendants state in their brief:

> "It is the defendants' position in this matter that the compulsory reference could not be ordered by the court of its own motion until such time as the plea in bar of accord and satisfaction had been ruled upon. In this case, the defendants point out that there were two distinct controversies, one as to the right of the plaintiff to recover of the defendants under any circumstances as the result of the plea in bar of accord and satisfaction, and the other controversy as to the amount of recovery in the event of the right to recover at all as (sic) established."

Defendants objected to the order of compulsory reference at the time it was entered, but did not except to it, and proceeded with the trial before the referee. By objecting to the order of compulsory reference when entered, and by, after the referee's report was filed, filing in apt time exceptions to particular findings of fact made by the referee, tendering issues and demanding a jury trial on each issue tendered, defendants complied with procedural requirements to preserve their right to a jury trial. *Bartlett v. Hopkins,* 235 N.C. 165, 69 S.E. 2d 236. Defendants have had a jury trial.

Defendants' exception to the order of compulsory reference appears only in their assignments of error. Exceptions which appear nowhere in the record, except under the assignments of error, are ineffectual, since an assignment of error must be supported by exception duly noted. *Beasley v. McLamb,* 247 N.C. 179, 100 S.E. 2d 387; *Barnette v. Woody,* 242 N.C. 424, 88 S.E. 2d 223; *Suits v. Insurance Co.,* 241 N.C. 483, 85 S.E. 2d 602.

During the trial by jury Joseph R. Marks, a witness for plaintiff, testified, *inter alia,* on direct examination: "It is true that I was manager of the FCX Store in Goldsboro and I was manager at the time the sales ticket for $96.00 was made. This sale to Mr. Scott was made under my control and supervision." The record then shows: "Defendant objects. Objection overruled: Exception No. 1B." Defendants assign this as error. In respect to this exception defendants state in their brief: "The defendants further argued to the Court that the lower Court erred when, after having ruled that a compulsory reference was necessary and the matter was back before the Court with proper exceptions and objections having been made to the referee's report and the matter was then before the Court to be heard did not rule upon the defendants' plea in bar." There is nothing in the record to show that defendants' counsel made any such argument

at the trial before Judge Paul and a jury. Manifestly, this cannot be considered as an exception to the order of compulsory reference when made. The court submitted to the jury Issue 5, an issue as to defendant Raymond A. Scott's plea of accord and satisfaction, and the jury answered the issue, No. This assignment of error is overruled.

In *Lumber Co. v. Pemberton,* 188 N.C. 532, 535, 125 S.E. 119, 121, the Court said:

> "Defendant in apt time objected to the order of reference and is therefore not deprived of his right to trial by jury of the issue of facts which he has joined with the plaintiff.
>
> "Having duly excepted to the order, and upon appeal assigned same as error, defendant presents to this Court, for review, the decision of the court below as a matter of law, contending that it was error to order a compulsory reference, for that the answer contains a general denial and sets up a plea in bar of plaintiff's right to recover in this action. Defendant having objected to the reference, and excepted to the order signed by the judge, had the option to appeal at once, if he was so minded, or to await final judgment, having preserved his objection by exceptions noted in apt time."

To the same effect: McIntosh, N. C. Practice and Procedure, 2d Ed., Vol. I, sec. 1407, pp. 787-8.

It cannot be said as a matter of law that plaintiff's cause of action does not require the examination of a long account. G.S. 1-189. Defendants, by not excepting to the order of compulsory reference when made and by proceeding with the trial before the referee, have not preserved the right to challenge it upon the ground that it should not have been entered before the alleged plea of accord and satisfaction had been passed on, or any other plea in bar they may contend is asserted in Raymond A. Scott's answer. *Graves v. Pritchett,* 207 N.C. 518, 177 S.E. 641, relied on by defendants, is not in point. In that case an order of compulsory reference was ordered, to which both sides *excepted.*

In addition, a serious question is presented as to whether the answer of Raymond A. Scott, liberally construed, shows that the plea in bar of accord and satisfaction extends to the whole cause of plaintiff's action, or merely to the state of the account between plaintiff and defendants since 26 November 1957. However, it is not necessary to decide this, because defendants did not except to the order of reference when made.

Raymond A. Scott, doing business under the trade name of Scott Poultry Company and Scott's Farm, had three accounts with plain-

tiff: (1) a special secured feeder account, No. 107; (2) a broiler account, No. 108; and (3) an open account, No. 106. Prior to 26 November 1957 plaintiff sold and delivered to Raymond A. Scott over a period of more than two years a substantial amount of chicks, feed, and supplies, which, according to the nature of the sale, were charged to the account for which they were ordered. Plaintiff brought an action on the broiler account on 28 January 1958 against Raymond A. Scott, which ended in a consent judgment against Raymond A. Scott in the amount of $2,472.99, plus interest in the amount of $105.10, which judgment with the costs Scott paid. On 26 March 1958 plaintiff instituted an action against Raymond A. Scott on the open account claiming an unpaid balance due it in the sum of $6,536.98, which action is now pending. The instant case is an action brought on the special secured feeder account, No. 107. Plaintiff and the defendants offered evidence in support of the allegations in their pleadings.

Joseph R. Marks, manager of plaintiff's store in Goldsboro during the years 1956, 1957, and 1958 and a witness for plaintiff, testified on cross-examination that the feed sold to Raymond A. Scott by plaintiff under his contracts was sold as feed would be sold to the public in general. He was then asked by defendants' counsel: "During the period October 5, 1956 to November 26, 1957, do you know the price of feed that was sold by you to the public in general?" He replied: "No, sir." He was then asked: "Can you get it for me?" He replied: "Yes, sir." He was then asked: "And will you?" He replied: "Yes, sir." Plaintiff objected to this line of questioning. The court sustained the objection. Defendants except and assign this as error. They contend they were "attempting to establish the price of feed sold to the public in general so the jury could get some idea about the costs of the feed sold to Raymond Scott." Defendants have not put this excluded evidence in the record so that we can see whether or not its exclusion was prejudicial to them, consequently this exception is without merit, and is overruled. *Board of Education v. Mann,* 250 N.C. 493, 109 S.E. 2d 175. In addition, neither defendant has averred in his or her answer that plaintiff's charges for feed delivered to Raymond A. Scott were in excess of the price' of feed sold by it to the public in general. Under the theory of the trial below such evidence would seem to be incompetent.

L. Clyde Rauch, a witness for defendants, testified on direct examination in substance that he was partially familiar with the flock of chickens raised on Mr. Scott's farm during the period indicated. He made various trips there and saw this flock of chickens, that it was an average flock, and it would have an average mortality rate of about

15 per cent. He was then asked by defendants' counsel: "Based upon what you saw at Raymond Scott's farm and as an expert in production of chickens, do you have an opinion satisfactory to yourself as to the average loss of chickens that Raymond Scott experienced?" The court sustained plaintiff's objection to the question, and defendants excepted, and assign this as error. The witness was permitted to answer: "Well I would say that he lost 15%. On one occasion I happened to be there those chickens were out of water out there, so from that experience I would say that it was an average operation because I have seen similar things happen too many times." There is no merit to this assignment of error, because the excluded evidence is a substantial repetition of what Rauch had immediately before testified to without objection.

Raymond A. Scott recalled as a witness testified on direct examination in substance: Of these twelve cheques which had been handed to him, one is payable to him and eleven to FCX, but all of these cheques were endorsed by FCX and turned over to him. They are the same cheques which were involved at the time he swapped a cheque with them. He looked for the cheques which he swapped with them during the lunch period, and he found two of them. His books are being audited, and things are tangled up. The cheque dated 22 August 1956 in the amount of $176 made payable to FCX is one of the cheques which he exchanged with FCX. Defendants' Exhibit AA dated 9 July 1957 is a cheque for $230 which was exchanged with Goldsboro FCX. "I would estimate that I gave approximately 50% of the total of the checks received from Southeastern Hatcheries back to FCX." He was then asked: "Can you get your bank stubs?" He replied: "We will do our best. There is a huge stack of that stuff and the girl that was working there is not there now." Defendants assign as error that the court upon plaintiff's motion struck out Scott's estimate of 50% given back to FCX. This assignment of error is overruled. It appears that Scott's estimate is a pure guess, and further, so far as the record shows, he made no effort to get his bank stubs so as to offer them in evidence, although this action had been pending since 21 January 1958 and the referee did not file his report until 10 July 1961.

Raymond A. Scott testified in substance without objection on direct examination: His Exhibit A, which he had introduced in evidence, is a letter dated 21 January 1958, written on stationary of plaintiff, Raleigh, N. C., purporting to be from B. W. Kenyon, Jr., manager of plaintiff's credit department, and received by him through the mails. This letter states he, according to its records, is indebted

to plaintiff in the sum of $3,457.31. This figure does not agree with his open account with them. Plaintiff has now sued him on all three of his accounts with it. The record then shows: "Q. Referring you to defendants' Exhibit A, Mr. Scott, what amount does this letter indicate that you are indebted to FCX? A. $3,457.31. Q. Does that exhibit indicate what account was involved? Motion answer be stricken from the records. Answer stricken." Defendants assign this as error. No prejudicial error is shown because this letter was in evidence for the jury, judge and counsel and all concerned to see.

Defendants state in their brief they have abandoned their assignments of error based on their exceptions Nos. 2, 4, 5, 6, 8, and 9.

Defendants' other assignments of error to the admission and exclusion of evidence have been carefully examined. Prejudicial error has not been shown, and they are overruled. Our task in considering the assignments of error to the admission and exclusion of evidence has been unusually laborious, for the reason that in the assignments of error the pages on which the exceptions appear in the record are set forth wrong in many instances, and the same is true of defendants' brief.

Defendants have assigned as error the court's charge as to what is meant by "accord and satisfaction." This assignment of error is overruled, for the very simple reason that what the judge charged as to the meaning of "accord and satisfaction" is taken almost verbatim from what this Court has said is the meaning of these words in *Dobias v. White,* 239 N.C. 409, 80 S.E. 2d 23, and in *Mercer v. Lumber Co.,* 173 N.C. 49, 91 S.E. 588.

The other assignments of error to the charge have been considered, and are all overruled, because, after a careful study of the charge in its entirety, prejudicial error is not shown by defendants.

It is significant that the able referee found in his report that plaintiff is entitled to recover from defendants the sum of $25,451.02, with interest, subject to a credit of $125.76 on account of interest paid by defendants on 15 November 1958, and that a jury in a trial presided over by one of our most learned and experienced trial judges, now deceased, found by its verdict that defendants were indebted to plaintiff in the sum of $25,451.02, and the plaintiff, according to the judgment, admitted in open court that defendants on this amount were entitled to a credit in the amount of $125.76 by reason of interest paid on 15 November 1958.

All defendants' assignments of error are overruled. Defendants have shown no error sufficiently prejudicial to justify disturbing the trial below.

No error.