KATHERINE E. KIVETT SAMONS v. DOCTOR ASSAD MEYMANDI, DOCTOR HERBERT W. VICK AND FRANK CERUZZI

No. 7012SC494

(Filed 21 October 1970)

**1. False Imprisonment § 2; Insane Persons § 1— commitment to mental hospital — legal process — sufficiency of evidence**

In plaintiff's action for false imprisonment arising out of her commitment to a mental institution for a period of 12 days, the trial court properly directed verdicts in favor of the defendants who had incorrectly filled out an application for plaintiff's commitment by the superior court clerk, since the commitment order of the clerk was issued pursuant to the clerk's own knowledge of plaintiff's condition and not upon the application of the defendants; consequently, plaintiff's commitment under the clerk's order was based upon legal process and did not constitute false imprisonment. G.S. 122-62.

**2. Rules of Civil Procedure § 59— setting aside damages — discretion of trial court**

The trial judge has discretionary power to set aside an award of damages if he believes that the damages were excessive and given under the influence of passion or prejudice, or if the evidence is insufficient to justify the verdict.

**3. Appeal and Error § 54— review of discretionary rulings**

A ruling that is within the discretion of a trial judge may not be set aside except upon a showing of abuse of discretion.

**4. False Imprisonment § 3— setting aside award of damages**

In plaintiff's action for false imprisonment arising out of her commitment to a mental institution for a period of 12 days, action of the trial court in setting aside verdict awarding plaintiff $4000 compensatory damages and $25,000 punitive damages, *held* within the trial court's discretion, which will not be disturbed on appeal in the absence of an abuse thereof.

**5. Damages § 11— award of punitive damages**

Punitive damages may be awarded only where the wrong is done wilfully or under circumstances of rudeness, oppression, or in a manner which evinces a reckless and wanton disregard of the litigant's rights.

**6. Appeal and Error § 53— error cured by verdict**

Error in submitting issue of punitive damages to the jury was cured when the trial court set aside the verdict awarding punitive damages.

**7. False Imprisonment § 2; Insane Persons § 1— emergency commitment to mental hospital — absence of legal process**

In plaintiff's action for false imprisonment arising out of her commitment to a mental institution for a period of 12 days, the act

of defendant physician in committing plaintiff to Dix Hospital under the statutory emergency proceeding without complying with the statutory requirement that his statement as to plaintiff's condition be made under oath, *is held* to constitute a deprivation of plaintiff's liberty without legal process. G.S. 122-59.

8. **Insane Persons § 1— emergency commitment statute — manner of use**
    The statute authorizing the emergency commitment of a mentally ill person is a drastic remedy and must be used with care and exactness.

APPEAL by Defendant Meymandi and Plaintiff Samons from *Hobgood, Judge of Superior Court,* March 1970 Civil Session of CUMBERLAND Superior Court.

Plaintiff instituted this action for false imprisonment and abuse of process arising out of her commitment to a mental institution for a period of 12 days.

On 18 March 1969 following a telephone conversation with an unidentified woman at the Cumberland County Mental Health Center, the Assistant Clerk of the Superior Court of Cumberland County issued an order directing the Sheriff to take the plaintiff to the Mental Health Center for the purpose of an examination to determine whether she should be committed to a mental institution. Pursuant to this order the plaintiff was taken into custody on the morning of 19 March 1969 and taken to the Mental Health Center for an examination. At the Mental Health Center the plaintiff was examined by the defendant Meymandi, who was the psychiatric director of the Center.

Subsequent to the examination of the plaintiff by defendant Meymandi at the Mental Health Center, the plaintiff was returned to the office of the Clerk of Superior Court of Cumberland County by the Deputy Sheriff. At this time there was on file in the office of the Clerk of Superior Court an application to procure the admission of the plaintiff into a psychiatric hospital for mental illness. This application was signed by the defendant Ceruzzi but had not been sworn to, and that portion of the application was in blank. The application was also signed by the defendant Meymandi and bore the date of 18 March 1969, and was notarized on the same date. It also bore the signature of the defendant Vick and was notarized on the 19th of March 1969. The medical questionnaire attached to the application was filled out as were two additional questionnaires pertaining to the history of the plaintiff; these last two questionnaires having been filled out by the Assistant Clerk of Superior Court.

In the office of the Clerk of Superior Court the plaintiff protested her commitment and advised the Clerk that the defendant Vick had not examined her and that she desired to be examined by her personal physician, and the plaintiff further agreed to be available for an examination by her personal physician, Dr. McFadyen, on 20 March 1969, and would abide by the advice and decision of Dr. McFadyen.

The Clerk of Superior Court on 19 March 1969 dismissed the proceeding for that the affidavit attached to the application had not been filled out properly, and the defendant Vick had not made an examination.

After signing the order dismissing the proceeding, another affidavit to procure admission into a psychiatric hospital for the plaintiff was received in the office of the Clerk of Superior Court. This affidavit was signed by the defendant Ceruzzi and indicated that it had been sworn to before a notary public on 19 March 1969. It was also signed by the defendant Meymandi and indicated that it had been sworn to before a notary public on 19 March 1969.

The Assistant Clerk of the Superior Court who had entered the order on 18 March 1969 to have the plaintiff taken to the Mental Health Clinic for an examination and who had been handling the matter, telephoned the defendant Meymandi and informed him that she had entered an order dismissing the proceeding and that the plaintiff desired to be examined by her own physician; that the Assistant Clerk had agreed to this proceeding, and that the plaintiff's own physician could not see her until the next day. She testified, "In response to that statement, Dr. Meymandi told me he couldn't afford to wait, she had made certain threats. He said she threatened to blow up the Mental Health Center and the Hospital Authority and that he could not afford to wait until the next day. He then told me that he was going to issue an emergency commitment." The Assistant Clerk informed the defendant Meymandi that this was all right with her as she had nothing to do with emergency commitments.

The defendant Meymandi then instituted emergency hospitalization procedures against the plaintiff by filling out and signing the appropriate forms as required by G.S. 122-59. In an affidavit pursuant to this procedure, he indicated that in his opinion the plaintiff was dangerous and that he had diagnosed

her mental condition as being "schizophrenic reaction, paranoid type." He also indicated that the plaintiff had previously been in a mental institution in 1960-61 at St. Elizabeth Hospital, Washington, D. C.

Pursuant to the emergency proceeding, the defendant Meymandi then telephoned the psychiatrist at Dorothea Dix Hospital in Raleigh to co-ordinate the admission of the plaintiff at that facility.

Pursuant to the emergency proceeding instituted by the defendant Meymandi, the plaintiff was taken into custody by a Deputy Sheriff of Cumberland County on 19 March 1969 and taken to Dorothea Dix Hospital in Raleigh where she was examined and treated with medication until her release on 31 March 1969.

The record discloses that plaintiff has had a long history of mental illness, and she has received medical treatment over a period of nine or ten years, and the defendant Meymandi was acquainted with this history.

For several days immediately preceding the hospitalization proceedings, the plaintiff had been picketing various public places in and around Fayetteville, including the Mental Health Center and the Hospital Authority. She had been carrying signs expressing her grievances against various officials including the defendants Meymandi and Ceruzzi.

At the close of plaintiff's evidence all three defendants moved for a directed verdict under Rule 50 of the North Carolina Rules of Civil Procedure. A directed verdict was granted as to defendants Vick and Ceruzzi but was denied as to defendant Meymandi. The defendant Meymandi introduced no further evidence. Issues were submitted to and answered by the jury as follows:

"1.   Did the defendant, Dr. Assad Meymandi, procure the detention of the plaintiff without legal process?

ANSWER:   Yes.

2.   If so, was the detention of the plaintiff caused by the willful and wanton conduct of the defendant, Dr. Assad Meymandi?

ANSWER:   Yes.

3. What compensatory damages, if any, is the plaintiff entitled to recover?

ANSWER: $4000.00.

4. What punitive damages, if any, is the plaintiff entitled to recover?

ANSWER: $25,000.00."

The trial judge denied a motion of the defendant Meymandi to set aside the verdict and to have judgment entered in accordance with his previous motion for a directed verdict as to the first and second issues. The trial judge in his discretion, pursuant to Rule 59(a)(6) and (7) set aside the jury verdict as to the third and fourth issues for that they were excessive and were "given under the influence of passion, and there was an insufficiency of evidence to justify the damages given by the jury."

The defendant Meymandi appealed as did the plaintiff Samons.

*Downing, Downing and David by Edward J. David for plaintiff appellant and plaintiff appellee.*

*Nance, Collier, Singleton, Kirkman and Herndon by James R. Nance and Butler, High & Baer by Ervin I. Baer for defendant appellant Meymandi.*

*Anderson, Nimocks & Broadfoot by Hal W. Broadfoot for defendant appellee Ceruzzi.*

*McCoy, Weaver, Wiggins, Cleveland & Raper by Richard M. Wiggins and Marion C. George, Jr., for defendant appellee Vick.*

CAMPBELL, Judge.

[1] Plaintiff's first assignment of error is the granting of the directed verdict in favor of the defendants Vick and Ceruzzi. Plaintiff has specifically abandoned the claim of abuse of process and asserts only the claim of false imprisonment. In *Fowle v. Fowle*, 263 N.C. 724, 140 S.E. 2d 398 (1965), it is stated:

" 'A cause of action for false arrest or false imprisonment is based upon the deprivation of one's liberty *without* legal process. . . .' "

Here the plaintiff was deprived of her liberty on two occasions. The first time was pursuant to the order under which the plaintiff was taken into custody and carried to the Mental Health Center for an examination. The order under which this was done was issued by the Assistant Clerk of Superior Court under the powers granted the Clerk by statute. G.S. 122-62 provides:

> *"Clerk to issue an order for examination.*—When an affidavit and request for examination of an alleged mentally ill person or alleged inebriate has been made, or when the clerk of superior court has other valid knowledge of the facts of the case to cause an examination to be made, he shall direct two qualified physicians who are not directly involved with the care and treatment of the patient in the hospital to which the person may be hospitalized, to examine the alleged mentally ill person or alleged inebriate. The Clerk is authorized to order the alleged mentally ill person or inebriate to submit to such examination, and it shall be the duty of the sheriff or other law enforcement officer to see that this order is enforced. . . ."

The record in this case shows that the Assistant Clerk issued the order on 18 March 1969 pursuant to which the plaintiff was taken into custody for the purpose of an examination. The statute permits the Clerk to issue the order upon his own knowledge, and the record shows that the Assistant Clerk did have sufficient knowledge and did issue the order. The fact that the defendants Vick and Ceruzzi had not made proper affidavits or examinations had nothing to do with the issuance of this particular order. Thus, on this occasion, the plaintiff was not deprived of liberty without legal process as the order under which she was taken into custody on this occasion was a legal process. The directed verdict in favor of defendants Vick and Ceruzzi was granted properly.

[2-4] Plaintiff next assigns as error the action of the trial judge in setting aside the verdict in regard to the compensatory and punitive damages. The judgment of the trial judge recited that he was acting under the discretionary authority granted in Rule 59 of the North Carolina Rules of Civil Procedure. Rule 59 provides:

> "(a)   *Grounds.*—A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds:
>
>         *   *   *

(6)   Excessive or inadequate damages appearing to have been given under the influence or passion or prejudice;

(7)   Insufficiency of evidence to justify the verdict or that the verdict is contrary to law;

\*   \*   \* ''

The trial judge has discretionary power to set aside an award of damages if he believes that the damages were excessive and given under the influence of passion or prejudice, or if the evidence is insufficient to justify the verdict. A ruling that is within the discretion of a trial judge may not be set aside except upon a showing of abuse of discretion, and there is no showing of abuse of discretion under the facts of this case.

[5, 6] The defendant Meymandi on his appeal presents the question as to the sufficiency of the evidence to allow the issue of punitive damages to be submitted to the jury. " 'Punitive damages may be awarded only where the wrong is done wilfully or under circumstances of rudeness, oppression or in a manner which evinces a reckless and wanton disregard of the litigant's rights.' " *Van Leuven v. Motor Lines,* 261 N.C. 539, 135 S.E. 2d 640 (1964). We are of the opinion that the evidence in this case did not justify the submission of the punitive damage issue to the jury. The error in submitting this issue to the jury was cured, however, when the trial judge set the verdict aside.

[7] The defendant Meymandi also presents the question as to whether the first issue was properly submitted to the jury. He contends that the emergency proceedings instituted by him constituted a legal process and that therefore the plaintiff was not deprived of her liberty without legal process. He contends that the statute need not be strictly complied with. He asserts that the statute is ambiguous and was intended only to authenticate the signature of the doctor signing. The pertinent part of the statute reads as follows:

". . . The physician's statement shall be sworn to before a person authorized to take acknowledgments or witnessed by a peace officer, and shall constitute authority, without any court action, for the sheriff or any other peace officer to take custody of the alleged homicidal or suicidal person and transport him immediately to the appropriate State hospital or other suitable place of detention. . . ." G. S. 122-59.

We are of the opinion that the statute is not ambiguous; that it is sufficiently broad to take care of any emergency situation and that the Legislature meant exactly what it says. Defendant Meymandi stated that he did not comply with the statute. He stated, "I presume I signed it in front of her, but I don't recall. I did not take an oath before her at the time I signed it; as I indicated earlier, this is not a customary thing to do every time you sign a form or appear before your secretary, to be sworn in; it is literally impracticable." Since the statute was not complied with, plaintiff was deprived of her liberty without legal process.

[8] Taking a person without the intervention of any court proceeding and simply upon a physician's statement to a State Hospital for examination and treatment is a drastic procedure. Handling mentally ill persons has frequently been by means of drastic procedures. At common law there was a right to detain a mentally ill person in order to protect such person from self-injury, and the public from injury at the hands of such deranged person. This doubtless accounts for the action of the Legislature in authorizing such an emergency commitment. The action of the Legislature supplanted the common law rule. As stated in *McMichael v. Proctor,* 243 N.C. 479, 91 S.E. 2d 231 (1956),

> "But the General Assembly is the policy-making agency of our government, and when it elects to legislate in respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the public policy of the State in respect to that particular matter."

There being a statute which provides for a drastic remedy, it is encumbent upon all that use it to do so with care and exactness, even though the user may think it "impractical."

The judgment of Judge Hobgood failed to grant a new trial as provided for in Rule 59 (d) after setting aside the verdict, although in the judgment he recited he was acting on his own initiative pursuant to Rule 59 (d). The plaintiff is entitled to a new trial on the issue of "What compensatory damages, if any, is the plaintiff entitled to recover?" To that end, this case is

Remanded.

Judges BRITT and VAUGHN concur.