ARTHUR HUROW v. RUBY MILLER AND FRANK MILLER

No. 7915SC390

(Filed 5 February 1980)

**1. Malicious Prosecution § 2— voter registration challenged—no malicious prosecution**

 Actions for malicious prosecution based on administrative proceedings have been limited by the courts to instances where there is a type of confinement or interference with the right to earn a livelihood; therefore, an action for malicious prosecution would not lie where defendants challenged plaintiff's right to vote.

**2. Process § 19— no abuse of process after action begun**

 Where plaintiff brought an action for malicious prosecution against defendants who had challenged his right to vote, defendants' counterclaim for abuse of process would not lie where defendants did not allege that process was abused, misused or otherwise perverted after the suit was begun.

APPEAL by plaintiff and defendants from orders entered by *McKinnon, Judge,* dated 23 January 1979 in Superior Court, ORANGE County, dismissing plaintiff's complaint and defendants' counterclaim. Heard in the Court of Appeals 3 December 1979.

 On 25 February 1978, the defendant, Ruby Miller, caused a formal voter challenge to be presented to the Orange County Elections Board, alleging that the plaintiff "was 'not a resident or domiciliary of said precinct and/or of Orange County, North Carolina,' and that Plaintiff was 'improperly registered in that registrar failed to perform statutory duties required by G.S. 163-72.' " As a result of such challenge to the right to vote, the Orange County Elections Board suspended the plaintiff's right to vote, pending a hearing held 3 May 1978. The defendants did not appear, but evidence was heard and the voting judges concluded that plaintiff was duly qualified to vote. Plaintiff contends that this action by defendant, Ruby Miller, was with malice and without probable cause; that defendant, Ruby Miller, knew or should have known, that such challenge would cause the plaintiff much worry, distress, and mental anguish; that, further, such challenge forced the plaintiff to incur legal fees to protect his rights at a cost of $150.00; that plaintiff has suffered injury to his reputation in the sum of $10,000; and that plaintiff has suffered

mental suffering and anguish, in addition to his damages, in the sum of $10,000.

Plaintiff further alleges as a second claim that the defendants, Ruby and Frank Miller, and others agreed and conspired together to commit the acts alleged above as part of a broader plan to challenge wrongfully the voting rights of 6000 persons, and that such acts were done without probable cause and with malice, causing great public expense.

As a third claim, plaintiff alleges that the voter challenge was instituted with gross and wilful negligence, with reckless and wanton disregard for plaintiff's rights, and with malice, and that plaintiff is entitled to exemplary and punitive damages in the amount of $500,000.

The defendants answered, admitting that Ruby Miller presented, or had presented, to the Orange County Elections Board a formal voter challenge which itself discloses the reasons therefor and denied the allegations in the complaint otherwise. The form used by defendant in the challenge appears to be the standard type.

As a further answer and defense and counterclaim, defendants alleged they were exercising legal rights granted by statutory authority; that the plaintiff instituted this process for the purpose of chilling the efforts of the defendants and others to challenge persons who are not legally domiciled in Orange County; that such suit was instituted with a malicious intent to misuse the process of the courts; that as a result of such suit, the defendants have lost time connected with the operation of their farm; that defendants have been reluctant to challenge others illegally registered to vote; and that by virtue of this suit, the defendants have suffered an injury to their property rights. Defendants sought judgment, requesting that plaintiff recover nothing and that defendants recover damages totalling $1,010,000.

Plaintiff moved to dismiss defendants' counterclaim pursuant to Rules of Civil Procedure 12(b)(6) and 12(f) and further denied certain allegations of the counterclaim.

Thereafter, defendants moved to dismiss the complaint for failure to state a claim pursuant to Rule of Civil Procedure 12(b)(6).

The presiding judge dismissed plaintiff's complaint and defendants' counterclaim pursuant to Rule 12(b)(6). Both plaintiff and defendants have appealed.

*Epting, Hackney & Long, by Robert Epting, for plaintiff appellant.*

*Graham & Cheshire, by D. Michael Parker, for defendant appellant.*

HILL, Judge.

This Court acknowledges that it is the right and duty of every qualified American citizen to vote. Likewise, this Court is aware that this is a mobile society which results in many American citizens changing their voting place each year. Our legislature has addressed this problem by requiring each county board of elections to establish a full-time system of registration under which the registration books, process, and records shall be open continuously for the acceptance of registration applications and for the registration of voters. G.S. 163-67. In addition, G.S. 163-69 provides that the registration certificates shall be a permanent record of registration and qualification to vote and shall not be cancelled except for specific reasons. Ample protection is provided those persons whose right to vote is questioned. *See* G.S. 163-89. Uniform systems of registration—including loose-leaf forms—are provided for by G.S. 163-65, and transfer to a new precinct is simple.

Because of population growth and frequent changes in domicile and residence by the electorate, the legislature has left the responsibility of policing the voting list to the voters. This is good, for it adds further dimension to our responsibility as voters in the conduct of elections. Such practice is to be commended when done within the guidelines set out by statute.

G.S. 163-85(a) provides that, "Any registered voter of the county may challenge the right of any person to register, remain registered, or vote in the county." Subsequent sections provide safeguards for the voter so challenged. A hearing is conducted at which time the voter may appear and take an oath outlining voting requirements. The voter may sign an affidavit which sets out the requirements for voting in lieu of personal appearance at

the hearing. Generally, such inconvenience is a small price to pay for the right to vote.

A challenge filed pursuant to G.S. 163-85(a) cannot deprive a challenged voter of his right to vote if he or she is qualified. Plaintiff was not denied his right to vote. Instead, as many good citizens did, he appeared at the hearing and established without apparent difficulty such right.

Here, the plaintiff contends that the challenge to his vote was one of 6000 challenges in Orange County; that such voter challenge in his case was made with malice and without probable cause; and that the defendant knew or should have known that said challenge would have caused plaintiff great trouble and expense.

[1] Malicious prosecution will not lie in this case. Actions for malicious prosecution may be based upon civil proceedings which involve an arrest of the person, seizure of property, or the loss of a legally protected right. *Carver v. Lykes*, 262 N.C. 345, 137 S.E. 2d 139 (1964). However, our courts have limited such actions based on administrative proceedings to instances where there is a type of confinement, *Fowle v. Fowle*, 263 N.C. 724, 140 S.E. 2d 398 (1965), or interference with the right to earn a livelihood. *Carver, supra.* This case does not fall within the limitations so established.

[2] Neither will the defendants' counterclaim for abuse of process lie. Abuse of process is the misuse of a legal process for an ulterior purpose. "It consists in the malicious misue or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is attempted to be secured." *Melton v. Rickman*, 225 N.C. 700, 703, 36 S.E. 2d 276 (1945), *citing* 1 Am. Jur. 176; *Stanford v. Grocery Co.*, 143 N.C. 419, 55 S.E. 815 (1906); and *Abernethy v. Burns*, 210 N.C. 636, 188 S.E. 97 (1936).

Here, defendants have not alleged that process in the suit by plaintiff was abused, misused or otherwise perverted *after* the suit was begun.

Admittedly, plaintiff took all necessary steps to preserve his right to vote at some expense and inconvenience to him, and he is

to be commended. Defendants' action to preserve fair and adequate voting lists is of equal importance, and they should not be penalized for attempting to do so.

For the reasons set out above, the decision of the trial judge in dismissing plaintiff's complaint and defendants' counterclaim is

Affirmed.

Chief Judge MORRIS and Judge PARKER concur.